**In Cause No. 14-11-00950-CV Dismissed, In Cause No. 14-11-00951-CV Affirmed in Part and Reversed and Remanded in Part, and Opinion filed April 30, 2013.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-11-00950-CV

**JOSEPH AND JAMIE SCHWARTZOTT, Appellants**

**V.**

**ETHERIDGE PROPERTY MANAGEMENT, Appellee**

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10CV1939**

## NO. 14-11-00951-CV

**JOSEPH AND JAMIE SCHWARTZOTT, Appellants**

**V.**

**MARAVILLA OWNERS ASSOCIATION, INC. AND HUDAK & DAWSON CONSTRUCTION CO., INC., Appellees**

## O P I N I O N

In these consolidated appeals, we consider whether the trial court erred in sustaining two defendants' pleas to the jurisdiction in a suit brought by two former owners of a condominium unit against the condominium owners' association, a contractor hired by the association, and the property manager of the condominiums. We affirm the trial court's dismissal as to one claim, reverse the trial court's dismissal of the remaining claims, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellants/plaintiffs Joseph and Jamie Schwartzott were the owners of Unit 113 at the Maravilla Condominiums on Seawall Boulevard in Galveston, Texas, in September 2008, when Hurricane Ike damaged their condominium unit. The Schwartzotts filed a lawsuit in the trial court, eventually asserting claims against appellee Maravilla Owners Association, Inc. (the "Association"), the governing body of the Maravilla Condominiums, appellee Hudak & Dawson Construction Co., Inc. ("Hudak"), a contractor hired by the Association, and Etheridge Property Management ("Etheridge"), the property manager for the Maravilla Condominiums. The Schwartzotts asserted claims for fraud, negligence, breach of an implied warranty of good and workmanlike repair, unjust enrichment, conversion, and breach of fiduciary duty. The Schwartzotts also alleged that the Association and Etheridge acted with gross negligence, and they sought exemplary damages against these defendants.

The Association and Hudak asserted separate pleas to the jurisdiction,

alleging the trial court lacked jurisdiction because the Schwartzotts lack standing to assert their claims against the Association and Hudak, respectively. In each plea, the respective defendant raised the same grounds, which were as follows: (1) because the Schwartzotts lost their interest in Unit 113 at a foreclosure sale on June 1, 2010, they no longer have an ownership interest in the unit, and, under Texas Property Code section 82.111, the Schwartzotts have no standing due to their lack of any right to the insurance proceeds in which they claim an interest in this lawsuit; (2) in their petition, the Schwartzotts do not allege a real controversy between the Schwartzotts and each respective defendant that can be resolved by the relief that the Schwartzotts seek; (3) the Schwartzotts lack standing to assert a claim for "money to make structural repairs to their unit" because under the Maravilla Condominium Declarations ("Declarations"), the Schwartzotts have never owned any of the structural components of Unit 113; (4) the Schwartzotts lack standing to recover any insurance proceeds because they have never had any property interest in the structural components of Unit 113 under Section 5.3 of the Declarations and because they have no interest in the common elements; and (5) the Schwartzotts lack standing to assert any claims based upon damage to the common elements of the condominiums or the structural components of Unit 113 because they have never had any property interest in the structural components of Unit 113 under Section 5.3 of the Declarations and because they have no interest in the common elements. Etheridge did not file a plea to the jurisdiction or otherwise seek dismissal of the Schwartzotts' claims against Etheridge.

After a non-evidentiary hearing, the trial court signed separate orders granting the pleas to the jurisdiction. Concerned that the language in one of the orders might dispose of the Schwartzotts' claims against Etheridge and create a final judgment, the Schwartzotts filed a notice of appeal seeking to appeal the two

orders. On the same day that the Schwartzotts filed their notice of appeal, they also filed a motion to sever their claims against the Association and Hudak into a separate case. The trial court granted this motion and severed the Schwartzotts' claims against the Association and Hudak into a separate case. After the severance, the Schwartzotts amended their notice of appeal in the unsevered case (Cause No. 14-11-00950-CV in this court) and filed a notice of appeal in the severed case (Cause No. 14-11-00951-CV in this court).

## II. STANDARD OF REVIEW

In filing a plea to the jurisdiction, a litigant challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Because subject-matter jurisdiction is a question of law, we conduct a de novo review of the trial court's ruling on the plea. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id*. If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id*. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial

4

court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227–28. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226–28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## III. ISSUES AND ANALYSIS

### A. Does this court have appellate jurisdiction in Cause No. 14-11-00950-CV?

The record does not reflect that Etheridge sought dismissal of the Schwartzotts' claims against it. The Association and Hudak sought dismissal based on the Schwartzotts' alleged lack of standing. In open court and in two written orders signed on July 27, 2011, the trial court stated that it granted the pleas to the jurisdiction of the Association and Hudak; it did not state it was granting any motion or plea filed by Etheridge. The trial court did not state that it was dismissing any claims against Etheridge. In the July 27, 2011 orders, the trial court did not actually dispose of all claims and parties, nor did the trial court state with unmistakable clarity that it was rendering a final judgment. Thus, the trial court did not render a final judgment on July 27, 2011. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192, 200 (Tex. 2001). In their notice of appeal and first amended notice of appeal prior to severance, the Schwartzotts did not purport to file an interlocutory appeal, and we find no statutes that would allow for an interlocutory appeal from the July 27, 2011 orders.

When the trial court severed the claims against the Association and Hudak, the premature First Amended Notice of Appeal was carried into the severed case

5

and deemed to have been filed just after it was severed into the severed case and the trial court's judgment became final and appealable.[1] *See* Tex. R. App. P. 27.1(a); *Engh v. Reardon*, No. 01-09-000017-CV, 2010 WL 4484022, at *2 (Tex. App.—Houston [1st Dist.] Nov. 10, 2010, no pet.) (mem. op.). After the severance, the Schwartzotts filed a Second Amended Notice of Appeal in the unsevered case, in which the only claims then pending were their claims against Etheridge. In this notice of appeal, the Schwartzotts sought to appeal the trial court's July 27, 2011 orders dismissing claims that were no longer in the unsevered case. We conclude that, under these circumstances, we lack appellate jurisdiction regarding the Second Amended Notice of Appeal. Accordingly, we dismiss the appeal in Cause No. 14-11-00950-CV.[2]

## B.     Did the trial court err in concluding that the Schwartzotts lack standing?

In their first issue in Cause No. 14-11-00951-CV, the Schwartzotts assert that the trial court erred in granting the pleas to the jurisdiction filed by the Association and Hudak. Though the Association and Hudak attached evidence to their pleas, none of this evidence contradicts any of the factual allegations in the Schwartzotts' live petition relevant to standing. In this pleading, the Schwartzotts make the following allegations:

- The Schwartzotts are the former owners of Unit 113 at the Maravilla Condominiums.
- The Schwartzotts' condominium and many of their personal possessions were significantly damaged in Hurricane Ike.

---

[1] Out of an abundance of caution, the Schwartzotts also filed another notice of appeal in the severed case.

[2] The Schwartzotts apparently were acting out of an abundance of caution. We have jurisdiction in Cause No. 14-11-00951-CV, and we address the Schwartzotts' arguments regarding the July 27, 2011 orders in that appeal.

- The Schwartzotts made a claim under their insurance policy with the Texas Windstorm Insurance Association ("Insurer") for structural damage to their unit and for replacement value of their damaged personalty.

- The Insurer compensated the Schwartzotts for their damaged personal property, but informed them that the money to pay for structural repairs to their condominium would be paid directly to the Association because the Association was responsible for repairing the individual units.

- Upon information and belief, the Insurer paid the Association between $12,000 and $13,000 for the repairs to the Schwartzotts' unit.

- Rather than use the insurance money to repair the Schwartzotts' unit, the Association instead used a portion of the money to pay for non-Hurricane Ike related expenses for the common areas of the property that had nothing to do with the Schwartzotts' unit. These repairs included building new fencing along the property line, rebuilding the cabana, and constructing a new spa building on the property.

- The Association originally hired Hudak to make repairs to the property and to many of the individual condominiums, including the Schwartzotts' unit. Upon information and belief, the Association did not thoroughly investigate Hudak's credentials or competence to perform the repair work in a good and workmanlike manner.

- When the Schwartzotts inspected the property in May 2009, they discovered that the work performed by Hudak was both shoddy and incomplete.

- Apparently based upon instructions from the Association, Hudak had completely demolished the interior of the Schwartzotts' unit, even though many of the fittings and fixtures were in good repair and did not need to be replaced. For example, Hudak stripped out all kitchen cabinets, granite countertops, kitchen appliances, and sheetrock from the Schwartzotts' unit, even though none of these items were in disrepair or had suffered damage due to Hurricane Ike.

- The fittings and fixtures Hudak removed were thrown away or damaged such that they could not be reused.

- Hudak performed its work in an unprofessional and non-workmanlike manner, and caused additional damage to the property, which caused

7

the Schwartzotts to suffer additional damages not caused by Hurricane Ike.

- Upon information and belief, the Association invoked the implied power-of-attorney provision in the Declarations for emergency situations to assume complete control over the Schwartzotts' condominium unit and personal property without regard to the Schwartzotts' wishes.

- Upon information and belief, the Association acts as if the "governing documents" somehow allow the Association and Hudak carte blanche to commit negligence and, arguably, trespass, in entering into the interior space of a condominium unit and destroying personal property owned by the Schwartzotts without any accountability and with total immunity.

- The Texas Property Code does not authorize a condominium association to preempt an individual unit owner's claims relating to the destruction of the individually-owned interior finishes and fixtures and his or her personal property and contents.

- When the Schwartzotts returned to Galveston on or about May 29, 2009, they were absolutely dismayed to find the interior of their condominium, which they owned on May 29, 2009, absolutely gutted and eviscerated. This lawsuit, therefore, does not involve claims by the condominium complex or the owners of "two or more unit owners." The sole unit involved in this particular litigation is the Schwartzotts' unit.

- The claims of the Schwartzotts involve contents in a single unit in the condominium and not the condominium project.

- The Association obtained insurance monies from the Insurer that were meant for the benefit of the Schwartzotts and were to be used to repair their condominium unit. The Association made representations to the Schwartzotts about how these monies were to be used to make necessary repairs to the Schwartzotts' condominium. In fact, the Association did not intend to use these monies for the stated purpose, but the proceeds were instead used to complete non-Hurricane Ike related repairs to the common areas of the property.

8

- The Association made false representations concerning the insurance proceeds, and the Schwartzotts have been damaged as a result of the Association's actions.

- The Association continued to make representations to the Schwartzotts about the quality of Hudak's workmanship, quality, and abilities that were false.

- Hudak began work on the project in September 2008. Nevertheless, over the course of the project, several disputes arose between Hudak and the Association. The Association terminated Hudak from the project effective May 31, 2009.

- On June 3, 2009, a fire destroyed a major portion of Maravilla Condominiums. Upon information and belief, a Hudak subcontractor working under Hudak's direction and supervision caused the fire by igniting the Maravilla Condominiums with sparks from a welding device.

- Despite this fire, the Association continued to represent to the Schwartzotts that Hudak possessed a reputation for competence and workmanship that Hudak did not have.

- The Association and Hudak owed the Schwartzotts a duty to ensure that (i) they used the insurance monies to repair the Schwartzotts' unit as intended; and (ii) the repairs were completed in a good and workmanlike manner. The Association and Hudak breached these duties. The breach of these negligence duties proximately caused the Schwartzotts to suffer damages, which they now seek to recover.

- Hudak provided repair services for the benefit of the Schwartzotts' condominium unit which had suffered damage from Hurricane Ike. Hudak had an obligation to perform the services in a good and workmanlike manner but did not do so, and Hudak's actions proximately caused the Schwartzotts to suffer damages for which they now seek recovery in this suit. Due to Hudak's failure to perform the repairs in a good and workmanlike manner, Hudak caused the Schwartzotts to suffer actual damages in the form of additional

9

expenses to complete the repairs performed poorly by Hudak and to fix or replace the fittings and fixtures damaged by Hudak.

- The Schwartzotts are entitled to restitution under the theory of unjust enrichment. The Association and Hudak would be unjustly enriched if they were allowed to benefit from receiving the insurance monies paid by the Insurer to repair the Schwartzotts' condominium unit without actually performing the necessary repairs.

- The Association and Hudak have and continue to wrongfully exercise control over insurance monies belonging to the Schwartzotts for repairs to their condominium unit. As a result, the Schwartzotts have suffered damages for which they now seek recovery.

- Under Section 82.103(a) of the Texas Property Code, the Association owed a fiduciary duty to the Schwartzotts. The Association violated its fiduciary duties of full disclosure, good faith and candor when it (i) failed to conduct thorough due diligence into Hudak to ensure that it was qualified to properly make repairs to the condominiums units and that such repairs would be completed in a timely and proper manner; and (ii) fraudulently took insurance monies meant for the Schwartzotts' benefit and used the monies for purposes other than the repair of the Schwartzotts' condominium unit. The foregoing breaches of fiduciary duty by the Association have proximately caused damages to the Schwartzotts and have created a benefit for the Association to the detriment of the Schwartzotts. The Schwartzotts sue for all damages resulting from these breaches of fiduciary duty.

## 1. *Texas Property Code Section 82.111*

The Association and Hudak assert that the Schwartzotts lack standing based upon Texas Property Code section 82.111, entitled "Insurance," which provides as follows:

(a) Beginning not later than the time of the first conveyance of a unit to a person other than a declarant, the association shall maintain, to the extent reasonably available:

10

(1) property insurance on the insurable common elements insuring against all risks of direct physical loss commonly insured against, including fire and extended coverage, in a total amount of at least 80 percent of the replacement cost or actual cash value of the insured property as of the effective date and at each renewal date of the policy; and

(2) commercial general liability insurance, including medical payments insurance, in an amount determined by the board but not less than any amount specified by the declaration covering all occurrences commonly insured against for death, bodily injury, and property damage arising out of or in connection with the use, ownership, or maintenance of the common elements.

. . .

(e) A claim for any loss covered by the policy under Subsection (a)(1) must be submitted by and adjusted with the association. The insurance proceeds for that loss shall be payable to an insurance trustee designated by the association for that purpose, if the designation of an insurance trustee is considered by the board to be necessary or desirable, or otherwise to the association, and not to any unit owner or lienholder.

(f) The insurance trustee or the association shall hold insurance proceeds in trust for unit owners and lienholders as their interests may appear. Subject to Subsection (i), the proceeds paid under a policy must be disbursed first for the repair or restoration of the damaged common elements and units, and unit owners and lienholders are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the property has been completely repaired or restored, or the condominium is terminated.

(g) An insurance policy issued to the association does not prevent a unit owner from obtaining insurance for the owner's own benefit.

Tex. Property Code Ann. § 82.111 (West 2013).

The following defined terms apply to the foregoing statute:

"Common elements" means all portions of a condominium other than the units and includes both general and limited common elements.

"General common elements" means common elements that are not limited common elements.

11

"Limited common element" means a portion of the common elements allocated by the declaration or by operation of [Texas Property Code Section 82.052] for the exclusive use of one or more but less than all of the units.

"Unit" means a physical portion of the condominium designated for separate ownership or occupancy, the boundaries of which are described by the declaration.

Tex. Property Code Ann. § 82.003(5), (14), (17), (23) (West 2013).

The parties have not cited and research has not revealed any case in which a court interprets or applies Texas Property Code section 82.111. We review the trial court's interpretation of applicable statutes de novo. *See Johnson v. City of Fort Worth*, 774 S.W.2d 653, 655–56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. *Id.* If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See id.*

Because no special exceptions were sustained against the Schwartzotts' live petition, this court construes that pleading liberally in the Schwartzotts' favor to include all claims that reasonably may be inferred from the language used in the petition, even if the petition does not state all the elements of the claim in question. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *London v. London*, 192 S.W.3d 6, 13 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). In their petition, the Schwartzotts make claims regarding "their insurance

12

policy with [the Insurer]," and the Schwartzotts allege that they "made a claim for structural damages to their condominium" under this policy. According to the Schwartzotts, the Insurer informed them that "money to pay for structural repairs to their condominium would be paid directly to [the Association] because [the Association] was responsible for repairing the individual units on its property."

Under the unambiguous language of the statute, only an insurance policy that the Association was required to maintain under Texas Property Code section 82.111(a)(1) would be subject to subsections (e) and (f), upon which the Association and Hudak rely to show that the Schwartzotts lack standing. *See* Tex. Property Code Ann. § 82.111. Under the allegations of the Schwartzotts' live petition, the policy in question is not a policy maintained by the Association under Texas Property Code section 82.111(a)(1). The Association and Hudak presented no evidence showing that this policy was maintained by the Association under Texas Property Code section 82.111(a)(1).[3] Presuming, without deciding, that the Schwartzotts would be deprived of standing if the policy in question fell within the scope of this statute, the Schwartzotts pleaded a policy outside the scope of the statute, and the defendants did not present any evidence showing that the policy is within the scope of this statute. We conclude that, on this record, the trial court erred to the extent it concluded that the Schwartzotts lacked standing based upon Texas Property Code section 82.111.

## 2. *Section 8.2 of the Declarations*

On appeal,[4] the Association and Hudak rely upon the following sentence in

---

[3] The record does not contain a copy of this insurance policy or any document detailing the coverages provided by this insurance policy.

[4] Neither the Association nor Hudak asserted this argument in its respective plea to the jurisdiction in the trial court. But, standing is a component of subject-matter jurisdiction and may be raised for the first time on appeal. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852

Section 8.2 of the Declarations[5] to show that the Schwartzotts lack standing to assert their claims:

> The proceeds of any insurance collected shall be made available to the Association for the purpose of repair, restoration or replacement in accordance with Section 8[.]3 below unless the Owners and First Mortgagee agree not to rebuild in accordance with the provisions set forth hereunder.

Condominium declarations are treated as contracts between the parties. *See Aghili*, 63 S.W.3d 812, 816 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). A plaintiff has standing when it is personally aggrieved. *Id.* The standing doctrine requires that there be a real controversy between the parties that actually will be determined by the judicial declaration sought. *Id.* at 849.

The Association and Hudak assert that Section 8.2 applies to the insurance proceeds to which the Schwartzotts refer in their petition. The Schwartzotts dispute this assertion and argue that Section 8.2 does not apply to proceeds from insurance policies purchased by unit owners like the policy alleged in their petition. Presuming, without deciding, that Section 8.2 applies to the proceeds in question and that Section 8.2 has the meaning asserted by the Association and Hudak, the Schwartzotts still would be aggrieved and would have a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome;

S.W.2d 440, 445–46 (Tex. 1993).

[5] The Association and Hudak assert that the Third Amended and Restated Declaration of Condominium Regime applies, while the Schwartzotts assert that the Fourth Amended and Restated Declaration of Condominium Regime applies. Both documents contain this sentence in the respective Section 8.2. We do not decide which instrument applies.

there still would be a real controversy between the parties regarding the construction of Section 8.2 that actually would be determined by the judicial declaration sought. Therefore, we conclude that the dispute between the parties regarding the application and construction of Section 8.2 of the Declarations goes to the merits of the Schwartzotts' claims and does not deprive the Schwartzotts of standing to assert any of their claims. *See id*. at 848–49 (discussing standing principles); *Smalley v. Smalley*, No. 14-11-00787-CV, —S.W.3d—,—, 2013 WL 1278415, at *3 (Tex. App.—Houston [14th Dist.] Mar. 28, 2013, no pet. h.).

### 3. *Section 5.3 of the Declarations*

The Association and Hudak rely upon the first sentence in Section 5.3 of the Declarations[6] to show that the Schwartzotts lack standing to assert claims for damage to property that they do not own and to assert claims regarding the proceeds of the insurance policy in question. Section 5.3 reads in its entirety as follows:

> Ownership. The Owners of Condominium Units and/or Timeshare Interests in a Timeshare Unit shall not be deemed to own the undecorated and/or unfinished surfaces of the perimeter walls, floors and ceilings surrounding the Unit, nor shall such Owners be deemed to own the utilities running through the Unit which are utilized for, or serve more than one Unit, except as a tenant-in-common with the other Owners. The Owners, however, shall be deemed to own and shall maintain the inner decorated and/or finished surfaces of the perimeter and interior walls, floors, and ceilings, doors, windows, and other such elements consisting of paint, wallpaper, and other finishing materials of the Unit.

The Schwartzotts' claims are broad enough to encompass a property-damage

---

[6] The Association and Hudak assert that the Third Amended and Restated Declaration of Condominium Regime applies, while the Schwartzotts assert that the Fourth Amended and Restated Declaration of Condominium Regime applies. The language of Section 5.3 is substantially the same in both documents. We do not decide which instrument applies.

claim based upon damage to the undecorated and/or unfinished surfaces of the perimeter walls, floors and ceilings surrounding the unit. We conclude that the Schwartzotts do not own or have a justiciable interest in such property. Thus, to the extent the Schwartzotts assert a property-damage claim for damage to the undecorated and/or unfinished surfaces of the perimeter walls, floors and ceilings surrounding Unit 113 ("Perimeter Damage Claim"), the trial court did not err in dismissing for lack of standing. *See Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 90 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (holding that claimants whose only interest regarding the facts giving rise to the claims were that they were married to a spouse who owned the property in question as separate property or that they were children of the property owner who orally promised to devise the property to her children lacked standing), *abrogated on other grounds by*, *Hubenak v. San Jacinto Gas Transmission Co*., 141 S.W.3d 172, 181–83 (Tex. 2004). Under their second issue, the Schwartzotts argue that, to the extent their live pleading was insufficient to show their standing, the trial court erred by denying them an opportunity to amend their petition to demonstrate standing. But, we conclude that the lack of standing regarding the Perimeter Damage Claim is an incurable jurisdictional defect, and, therefore, presuming that the Schwartzotts preserved error and that the trial court erred in failing to allow an opportunity to amend, such error is harmless.[7] *See* Tex. R. App. 44.1(a); *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 846 (Tex. 2007).

As to the Schwartzotts' claims regarding the proceeds of the insurance

---

[7] In their third issue, the Schwartzotts assert that the trial court erred in ordering that the Schwartzotts take nothing by their claims against Hudak. By failing to voice this complaint in the trial court, the Schwartzotts failed to preserve error. *See Torres v. Clark*, No. 14-11-00750-CV, 2012 WL 1694607, at *2 (Tex. App.—Houston [14th Dist.] May 15, 2012, no pet.) (mem. op.). Thus, we need not decide whether the trial court reversibly erred in ordering that they take nothing on the Perimeter Damage Claim, as opposed to dismissing this claim with prejudice. *See id*.

policy in question, Section 5.3 does not address insurance proceeds or the Schwartzotts' right to receive or obtain the benefit of any insurance proceeds. Accordingly, this provision does not deprive the Schwartzotts of standing to pursue claims regarding the proceeds of the insurance policy in question. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49.

### 4. *The Common Elements*

In the Declarations, the term "Condominium Unit" is defined as "a Unit which is designated for residential purposes, together with an undivided interest, appurtenant to the Unit, in and to the Common Elements."[8] Thus, the Declarations reflect that all owners of units have an undivided interest in and to the Common Elements, which are defined as "the General and Limited Common Elements as described herein." The Association and Hudak assert that the Schwartzotts lack standing to pursue claims regarding the proceeds of the insurance policy in question based upon these definitions from the Declarations. But the definitions do not address insurance proceeds or the Schwartzotts' right to receive or obtain the benefit of any insurance proceeds. Accordingly, these definitions do not deprive the Schwartzotts of standing to pursue claims regarding the proceeds of the insurance policy in question. *See id.*

The Association and Hudak assert that the Schwartzotts lack standing to assert any claims rooted in damage to the Common Elements of the condominiums because they have no interest in the common elements based upon these definitions in the Declarations. The Association and Hudak rely upon the Fourth Court of

---

[8] The Association and Hudak assert that the Third Amended and Restated Declaration of Condominium Regime applies, while the Schwartzotts assert that the Fourth Amended and Restated Declaration of Condominium Regime applies. The definitions of "Condominium Unit," "Common Elements," and "General and Limited Common Elements" are substantially the same in both documents. We do not decide which instrument applies.

Appeals's decision in *Myer v. Cuevas*, 119 S.W.3d 830, 834 (Tex. App.—San Antonio 2003, no pet.). Presuming, without deciding, that the Schwartzotts would lack standing to assert a property-damage claim based upon damage to the Common Elements, as defined in the Declarations, we conclude that the Schwartzotts have disavowed that they are asserting any such claim in paragraph 16 of their live pleading.[9] Because the Schwartzotts are not asserting any such claim, we conclude that the trial court did not rule on any such claim, and therefore, there is no possible error in this regard.

### 5. *Status as Mortgagor*

The Association and Hudak assert that, because the Schwartzotts mortgaged their interest in Unit 113, they were required to plead that their mortgagee's superior interest in Unit 113 was satisfied or extinguished in order to have standing to bring their claims. The Association and Hudak argue that, because the Schwartzotts have not made this allegation in their petition, they lack standing and only the mortgagee would have standing to assert such claims. Neither the Association nor Hudak cites any cases that support this proposition and research has revealed no such cases. The Association and Hudak cite cases holding that a first mortgagee has a superior interest to a junior mortgagee or to the mortgagor. *See, e.g., FDIC v. Tex. Elec. Serv. Co.*, 723 S.W.2d 770, 771–72 (Tex. App.—El Paso 1986, no writ). No mortgagee is a party in this litigation. Though the Association and Hudak attached a copy of the Substitute Trustee's Deed to their pleas to the jurisdiction, our record does not contain the Deed of Trust or any other document detailing the rights of the mortgagee. We conclude that the

---

[9] The Association and Hudak also cite *Mitchell v. LaFlamme*. *See* 60 S.W.3d 123 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Though we do not address the merits of this argument, we note that the declarations in the *Mitchell* case stated that the condominium association owned the common areas, whereas the Declarations state that all owners of units have an undivided interest in and to the Common Elements. *See id*. at 128.

Schwartzotts' status as mortgagors at the time of the alleged acts and omissions allegedly giving rise to their claims does not deprive the Schwartzotts of standing to pursue their claims. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49.

### 6. *Effect of Foreclosure on Claims based upon Pre-foreclosure Conduct*

It is undisputed that the mortgagee foreclosed on the Schwartzotts' interest in Unit 113 on June 1, 2010. The Association and Hudak assert that this foreclosure sale deprives the Schwartzotts of standing to pursue their claims. For more than a hundred years, the Supreme Court of Texas has recognized that a claim for injury to real property accrues when the injury is committed. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010); *Houston Waterworks Co. v. Kennedy*, 8 S.W. 36, 37 (Tex. 1888). The right to sue is a personal right that belongs to the person who owns the property at the time of the injury, and the right to sue does not pass to a subsequent purchaser of the property unless there is an express assignment of the cause of action. *See Exxon Corp.*, 331 S.W.3d at 424; *Abbott v. City of Princeton,* 721 S.W.2d 872, 875 (Tex. App.— Dallas 1986, writ ref'd n.r.e.), *abrogated in part on other grounds by*, *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 281–82 (Tex. 2004). A mere subsequent purchaser of the property cannot recover for an injury committed before his purchase. *See Exxon Corp.*, 331 S.W.3d at 424; *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.). *See also Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562–63 (Tex. 1936) (holding that a cause of action for damages to property resulting from a permanent nuisance accrues to the owner of the land at the time the injury begins to affect the land, and mere transfer of the land by deed does not transfer the claim for damages).

The Association and Hudak have not pleaded or proved that there was an

19

express assignment of any claim from the Schwartzotts to the mortgagee, nor have they cited any cases holding that a foreclosure sale deprives a former property owner of standing to pursue claims that accrued during that person's ownership of the property. We conclude that the foreclosure sale on June 1, 2010 does not deprive the Schwartzotts of standing to pursue claims based upon alleged acts or omissions that occurred before that date. *See Exxon Corp.*, 331 S.W.3d at 424; *Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49.

### 7. *Existence of Justiciable Issues*

In their pleas to the jurisdiction, the Association and Hudak assert that, in their petition, the Schwartzotts do not allege a real controversy between the Schwartzotts and each respective defendant that can be resolved by the judicial relief that the Schwartzotts seek. Thus, the Association and Hudak assert that there are no justiciable issues in this case that a court can resolve. Construing the Schwartzotts' pleading liberally in the Schwartzotts' favor, we conclude that (1) the Schwartzotts have alleged claims involving a real controversy between the Schwartzotts and each respective defendant that can be resolved by the judicial relief (money damages) that the Schwartzotts seek; and (2) presuming that the Schwartzotts' factual allegations are true, the Schwartzotts are aggrieved and have a sufficient relationship with the lawsuit so as to have a "justiciable interest" in its outcome. *See Austin Nursing Ctr., Inc.*, 171 S.W.3d at 848–49; *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 897; *Smalley*, 2013 WL 1278415, at *3. Based upon their standing arguments and the evidence that they submitted to the trial court, the only claim as to which the Association and Hudak have shown a lack of standing is the Perimeter Damage Claim, discussed above. Thus, we conclude that the trial court erred in dismissing for lack of standing all of the Schwartzotts' claims except the Perimeter Damage Claim. In adjudicating these issues as to

20

whether the Schwartzotts have standing to assert their claims, we do not address the merits of any of the Schwartzotts' claims. *See Miranda*, 133 S.W.3d at 226–28; *County of Cameron*, 80 S.W.3d at 555; *Prairie View A & M Univ. v. Dickens*, 243 S.W.3d 732, 736 & n.5 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

## IV. CONCLUSION

The Schwartzotts filed their Second Amended Notice of Appeal in the unsevered case, in which the only claims then pending were their claims against Etheridge. In this notice of appeal, the Schwartzotts sought to appeal the trial court's July 27, 2011 orders dismissing claims that were no longer in the unsevered case. Under these circumstances, this court lacks appellate jurisdiction regarding the Second Amended Notice of Appeal. Accordingly, we dismiss the appeal in Cause No. 14-11-00950-CV.

In Cause No. 14-11-00951-CV, construing the Schwartzotts' pleading liberally in their favor, we conclude that the Schwartzotts have standing to assert their claims. Based upon their standing arguments and the evidence that they submitted to the trial court, the only claim as to which the Association and Hudak have shown a lack of standing is the Perimeter Damage Claim. Accordingly, we overrule the first issue as to the Perimeter Damage Claim and sustain the first issue as to the Schwartzotts' other claims. The Schwartzotts, in their second issue, assert that, to the extent their live pleading was insufficient to demonstrate their standing, the trial court erred by denying them a chance to amend their pleading to show standing. As to all claims other than the Perimeter Damage Claim, the condition precedent to the second issue has not occurred, so we do not address that issue. As to the Perimeter Damage Claim, we conclude that there is an incurable jurisdictional defect, and, therefore, presuming that the Schwartzotts preserved their complaint and that the trial court erred in failing to allow an opportunity to

21

amend, the error is harmless. Accordingly, we overrule the second issue as to the Perimeter Damage Claim.[10]

For the foregoing reasons, the trial court's judgment is affirmed in part, as to the Perimeter Damage Claim, and reversed and remanded in part as to the Schwartzotts' other claims.


/s/    Kem Thompson Frost
        Justice

Panel consists of Justices Frost, Christopher, and Jamison.

---

[10] On remand, the Schwartzotts, consistent with the Texas Rule of Civil Procedure, may amend their petition. In the second issue, we address the trial court's alleged failure to give the Schwartzotts an opportunity to amend their petition after concluding that there was a lack of standing.