**Appeal Dismissed and Plurality, Concurring, and Dissenting Opinions filed April 22, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00158-CV

---

## YUVAL LAPINER, Appellant

### V.

## JACKOB MAIMON, MAX PRIDGEON, MICHELLE R. CINNAMON-FLORES, HAIM TSUFF, GOODRICH GLOBAL LTD., ISRAMCO, INC., JEFFREY GOLDSTEIN, AND THEODORE STEINBERG, Appellees

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2009-34535**

---

## D I S S E N T I N G    O P I N I O N

The plurality[1] and concurring opinions conclude, for different reasons, that

---

[1] Although Justice McCally's opinion is captioned a "plurality" opinion, no other Justice of this Court has joined it. *See Resendez v. State*, 256 S.W.3d 315, 330–31 (Tex. App.—Houston [14th Dist.] 2007) (op. on reh'g), *rev'd on other grounds*, 306 S.W.3d 308 (Tex. Crim. App. 2009) (holding one-justice opinion has no precedential value); *cf. Unkart v. State*, 400 S.W.3d 94, 100 & n.31 (Tex. Crim. App. 2013) (defining plurality opinion as "that opinion in a fractured decision that was joined by the highest number of judges or justices").

appellant Yuval Lapiner's appeal must be dismissed.  I disagree with these reasons for dismissal because they

- unjustifiably narrow the subject-matter jurisdiction of Texas trial courts in a manner that (1) resurrects an argument appellees expressly waived below and (2) allows any Texas judgment to be attacked as void for failure to prove a statutory requirement;

- apply Delaware rather than Texas law to matters of jurisdiction and procedure;

- adopt a rule requiring settlement objectors to intervene in order to appeal, which is contrary to the position taken by most jurisdictions nationwide;

- create procedural traps for unwary litigants and thereby thwart the direction of the Supreme Court of Texas to avoid resolving appeals on procedural technicalities rather than reaching the merits; and

- insulate potentially collusive settlements involving large awards of attorneys' fees from searching appellate review.

I conclude both of appellees' asserted grounds for dismissal are incorrect, so I would deny their motions to dismiss and address the merits of Lapiner's issues on appeal.  These issues include important matters of first impression regarding the standard for reviewing settlements of derivative suits, as well as the ability of an objector to such a settlement to recover attorneys' fees.  Because my colleagues do not reach these issues, and instead dismiss Lapiner's appeal, I respectfully dissent.

## BACKGROUND

With two exceptions, the plurality opinion recounts the facts necessary to resolve the jurisdictional issues raised by appellees.  The first exception is that it omits relevant language from three key trial court documents: (1) the trial court's

Preliminary Order Approving Derivative Settlement and Providing for Notice; (2) the Notice of Proposed Settlement of Derivative Action, Hearing Thereon, and Right to Appear that was approved by the trial court and provided to the shareholders; and (3) the trial court's Final Order and Judgment. This language is critical to understanding why Lapiner—who bought his shares of Isramco before August 15, 2011—properly objected to a proposed settlement that would bind him and is entitled to appeal from the judgment approving that settlement.[2]

The trial court's Preliminary Order Approving Derivative Settlement and Providing for Notice, signed on August 22, 2011, states in pertinent part:

> The Court approves in form and content the Notice . . . and finds that the distribution and publication of the Notice . . . meets the requirements of the Texas Business Organization Code 21.560(b) and due process and all other applicable laws, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice of the matters set forth therein for all purposes to all Persons entitled to such notice.
>
> . . .
>
> **All Isramco Shareholders shall be bound** by all orders, determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to Isramco Shareholders.
>
> . . .
>
> **Any Current Isramco Shareholder (all current holders of Isramco, Inc. common stock as of August 15, 2011) may appear and show cause**, if he, she or it has any reason **why** the terms of the Stipulation, **the Settlement** of the Action, and/or the Fee and Expense Award **should not be approved** as fair, reasonable and adequate, or why a Judgment should not be entered thereon, **provided however . . .**

---

[2] Lapiner filed a sworn petition initiating a derivative lawsuit in Delaware in July 2010. In that petition, Lapiner alleged he owned shares of Isramco stock and held those shares at the time the alleged wrongdoing was discovered.

*no Current Isramco Shareholder shall be heard* or entitled to contest the approval of [the Settlement] *unless the Person has*, at least fourteen . . . days prior to the Settlement hearing, *filed* with the Clerk of the Court and served on the [counsel for the parties to the litigation] . . . *appropriate proof of stock ownership*, along with written objections, including the basis therefore, signed as authorized by the objecting shareholder, and copies of any papers and briefs in support thereof . . . .

*Any Current Isramco Shareholder* who does not make his, her or its objection in the manner provided herein shall be deemed to have waived such objection and *shall forever be foreclosed from making any objection* to the fairness, reasonableness, or adequacy of the Settlement as incorporated in the Stipulation and to the Fee and Expense Award, unless otherwise ordered by the Court, but *shall otherwise be bound by the Final Order and Judgment to be entered and the releases to be given*.

. . .

The Court may approve the Settlement, with such modifications as may be agreed to by the Settling Parties, if appropriate, without further notice to Current Isramco Shareholders.

(Emphasis added.)

This order approved a Notice of Proposed Settlement of Derivative Action, Hearing Thereon, and Right to Appear that was provided to Lapiner and other shareholders. That notice provides:

IMPORTANT NOTICE TO *ALL CURRENT HOLDERS OF ISRAMCO, INC. COMMON STOCK AS OF AUGUST 15, 2011 ("CURRENT ISRAMCO SHAREHOLDERS")* (EXCLUDING DEFENDANTS) AND THEIR SUCCESSORS-IN-INTEREST. PLEASE NOTE THAT THIS ACTION IS NOT A "CLASS ACTION" AND NO INDIVIDUAL SHAREHOLDER HAS THE RIGHT TO BE COMPENSATED AS RESULT OF THIS SETTLEMENT.

. . .

4

***IF YOU ARE A CURRENT OWNER OF ISRAMCO COMMON STOCK, YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THE LITIGATION***.

. . .

***Any Current Isramco Shareholder that objects to the Settlement of the Action shall have a right to appear and to be heard at the Settlement Hearing*** . . . .   However, ***no Person*** other than Plaintiffs' Counsel and Defendants' counsel in the Action ***shall be heard at the Settlement Hearing unless*** no later than [14] days prior to the date of the Settlement Hearing, ***such person has filed with the Court . . . a written notice of objection, . . . setting forth their ground for opposing the Settlement, and proof of both their status as a current Isramco Shareholder and the dates of stock ownership in Isramco***. . . .   Only Current Isramco Shareholders who have filed and delivered valid and timely written notices of objection will be entitled to be heard at the Settlement Hearing unless the Court orders otherwise.

. . .

Any Person who fails to object in the manner described above shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding, unless the Court orders otherwise.

Current Isramco Shareholders who have no objection to the Settlement or the Fee and Expense Award do not need to appear at the Settlement Hearing or take any other action.  ***If you are a Current Isramco Shareholder, you will be bound by the Final Order and Judgment of the Court, and you will be deemed to have released any and all claims that have or could have been brought in the Action***.

(Emphasis added.)

After considering and overruling the objection Lapiner filed in compliance with this notice, the trial court signed a Final Order and Judgment approving the settlement.  It provides in part:

5

8.    The Action and all claims contained therein, as well as all of the Released Claims, are hereby dismissed with prejudice. . . .

9.    Upon the Effective Date, . . . Plaintiffs (acting on their own behalf and derivatively on behalf of Isramco), and *each Isramco shareholder* (solely in his, her, or its capacity as an Isramco shareholder) shall be deemed to have, and by operation of the Final Order and Judgment shall have, *fully, finally, and forever released, relinquished and discharged the Released Claims against the Released Persons and any and all claims (including Unknown Claims) arising out of, relating to, or in connection with, the defense, settlement or resolution of the Action against the Released Persons*.

10.    Upon the Effective Date, . . . Isramco and *each Isramco shareholder* (solely in his, her, or its capacity as an Isramco shareholder) shall be deemed to have, and by operation of the Judgment shall have, *fully, finally, and forever released, relinquished and discharged each and all of the Plaintiffs and Plaintiffs' Counsel from all claims (including Unknown Claims) arising out of, relating to, or in connection with, the institution, prosecution, assertion, settlement or resolution of the Action or the Released Claims*.

11.    Isramco, Plaintiffs (acting derivatively on behalf of Isramco), and *each Isramco Shareholder* (solely in their capacity as an Isramco shareholder) are hereby *barred and enjoined from instituting and/or prosecuting any other action against the Released Persons in any court or jurisdiction asserting any Released Claims*.

(Emphasis added.)  Lapiner appeals from this judgment.

The second exception is that the plurality opinion omits any specific reference to the actions of counsel for several of the defendants[3] at the Settlement

---

[3] In the trial court, there were four groups of parties, each represented by their own counsel: the plaintiffs, Jeffrey Goldstein and Theodore Steinberg; Isramco, Inc. the nominal defendant; defendants Jackob Maimon, Max Pridgeon, and Michelle R. Cinnamon-Flores; and defendants Haim Tsuff and Goodrich Global Ltd.  The referenced statements were made by trial counsel for the Maimon group of defendants.  On appeal, all of the defendants, including nominal defendant Isramco, Inc., are represented by the same counsel who represented the Maimon group of defendants in the trial court.  For this reason, I do not differentiate between the various groups of defendants but instead refer to them collectively as defendants.

Hearing. During that hearing, the trial court first addressed the pending motions to strike Lapiner's petition in intervention. In the ensuing discussion, counsel for the defendants told the trial court: "I believe it would be error to allow the intervention in this case because [Lapiner] has no justiciable interest in this case not being a shareholder of record at the time." Counsel for the defendants then continued: "But as far as your question goes . . . will [striking Lapiner's intervention] make any difference to [Lapiner] in terms of his ability to seek relief for the corporation, . . . there should be no harm because he's still an objector and in that capacity as an objector, he can go forward in his objection and . . . has made that objection." After a brief response from Lapiner's counsel, the trial court granted the motions to strike Lapiner's intervention. The remainder of the hearing addressed the proposed settlement and Lapiner's objections to it. At the conclusion of the hearing, the trial court approved the settlement as fair, reasonable, and adequate.

## ANALYSIS

Appellees have moved to dismiss Lapiner's appeal on two grounds. First, defendants contend we should dismiss Lapiner's appeal because he did not own Isramco stock at the time of the wrongdoing alleged in this shareholder derivative suit and therefore would not have had standing to institute or maintain the suit. Because Lapiner could not have maintained the suit himself, defendants argue that he also lacked standing to object to the proposed settlement of the suit in the trial court, and therefore he lacks standing to appeal the trial court's judgment approving it. Second, both defendants and plaintiffs argue we must dismiss Lapiner's appeal because he was not a party in the trial court and did not timely file his notice of appeal. I address each ground in turn.

7

**I. Defendants did not challenge Lapiner's ability to object in the trial court, and in any event Lapiner had standing to object under Texas law.**

The concurring opinion agrees with defendants' first ground for dismissal, concluding that (1) under Delaware law, Lapiner could not object to the settlement of this derivative suit in the trial court because he did not own Isramco stock at the time of the wrongdoing alleged in the suit; and (2) this purported defect may be raised for the first time on appeal because it deprived the trial court of subject-matter jurisdiction to consider his objection. I disagree because these conclusions conflate two issues that the Texas Legislature has told us are separate: whether a shareholder may institute or maintain a derivative suit, and whether a shareholder may object to a proposed settlement of a pending derivative suit in response to a trial court's invitation. *Compare* Tex. Bus. Orgs. Code Ann. § 21.552 (West 2012) (providing that a shareholder "may not institute or maintain a derivative proceeding unless" the shareholder owned stock in the corporation at the time of the acts or omissions complained of) *with id.* § 21.560 (West 2012) (providing that a derivative suit may not be settled without trial court approval and that the trial court "shall direct that notice be given to affected shareholders if the court determines that a proposed discontinuance or settlement may substantially affect the interests of other shareholders").

It is undisputed that the trial court had subject-matter jurisdiction over this shareholder derivative lawsuit. The separate question whether Lapiner satisfied the statutory prerequisites to object to the pending settlement is not a jurisdictional issue that may be raised for the first time on appeal. Moreover, even if that question could be raised in this Court, I would hold that the trial court did not abuse its discretion by inviting and considering Lapiner's objection under Texas law. Accordingly, the issue of Lapiner's trial court standing provides no basis to dismiss this appeal.

8

**A.** **The trial court had subject-matter jurisdiction over this suit, and whether Lapiner met any statutory prerequisites to object is not a jurisdictional defect and was not challenged below.**

As a court of general jurisdiction, the trial court had subject-matter jurisdiction over the derivative suit brought by plaintiffs. Tex. Const. art. V, § 8; *see Dubai Petrol. Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). Thus, the real question presented by these motions to dismiss is not Lapiner's "standing" in the jurisdictional sense of that term. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160–61 (2010) (explaining that the term "jurisdictional" properly applies only to prescriptions delineating the classes of cases (subject-matter jurisdiction) and persons (personal jurisdiction) that implicate a court's adjudicatory authority).

Instead, as the plurality opinion and many other courts recognize, the question before us is whether Lapiner should be treated as a party for purposes of appeal. *See Devlin v. Scardelletti*, 536 U.S. 1, 6–7 (2002) (holding question whether unnamed class member has standing to appeal does not implicate court's subject-matter jurisdiction but instead whether he should be considered a party for purposes of appealing the trial court's approval of the settlement over his objection); *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754–55 (Tex. 2003) (noting that court of appeals had dismissed for want of jurisdiction appeal by unnamed class members who unsuccessfully objected to settlement, but following *Devlin* in concluding that "the real issue" is "whether or not the class member is a 'party' for purposes of appeal," and holding that objecting class members should be considered parties); *see also Official Comm. of Unsecured Creditors of WorldCom, Inc. v. S.E.C.*, 467 F.3d 73, 77–78 (2d Cir. 2006) (stating that question of nonparty standing to appeal does not implicate the jurisdiction of the courts, but instead focuses on whether an appellant should be treated as a party for purposes of appealing a judgment when it was not a party in

9

the trial court proceedings). I address Lapiner's party status in Part II below.

Despite these authorities, the concurring opinion argues that the trial court lacked subject-matter jurisdiction to consider Lapiner's objection because he did not satisfy a statutory prerequisite under Delaware law to bring his own derivative suit: he did not own Isramco stock at the time of the alleged wrongdoing. Leaving aside for the moment whether this statutory standing requirement applies to objections (which I address in Part I.B. below), the concurring opinion applies the wrong law to analyze the question of jurisdiction. The jurisdiction of Texas courts is governed by Texas law. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 144–49 (Tex. 2012) (applying Texas law to resolve question of appellate jurisdiction over an appeal from the court of appeals' dismissal of the plaintiffs' federal causes of action); *Solotko v. LegalZoom.com, Inc.*, No. 03-10-00755-CV, 2013 WL 3724770, *2 (Tex. App.—Austin July 11, 2013, pet. denied) (mem. op.) (applying Texas law to resolve challenge to trial court's jurisdiction to consider the plaintiff's class action claims made under California law); *see also* Restatement (Second) of Conflict of Laws § 123 (1971) ("The local law of the forum determines which of its courts, if any, may entertain an action on a claim involving foreign elements.").

Under Texas law, the concurrence's argument that Lapiner failed to establish a statutory prerequisite to his objection—even if correct—would not deprive the trial court of jurisdiction, so it may not be raised for the first time on appeal. As the supreme court has explained, the failure to establish a statutory prerequisite to suit is not a jurisdictional defect but instead goes to the right of the plaintiff to relief. *Dubai Petrol. Co.*, 12 S.W.3d at 76–77.[4] In the trial court, no one argued

---

[4] *See also City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009) (observing that since *Kazi*, the supreme court has "been reluctant to conclude that a [statutory] provision is jurisdictional, absent clear legislative intent to that effect"); *Cook v. Cameron*, 733 S.W.2d 137,

10

that Lapiner lacked standing to object to the settlement because he bought his stock too late; neither of my colleagues contends otherwise. Accordingly, we should not consider this non-jurisdictional argument raised for the first time on appeal. *See Coastal Liquids Transp., L.P. v. Harris Cnty. Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex. 2001) (rejecting characterization of arguments as jurisdictional rather than statutory and holding appellant waived arguments by raising them for the first time on appeal); *Dreyer v. Green*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim . . . must have been asserted in the trial court in order to be raised on appeal."). Delaware courts follow a similar approach. *See In re Infinity Broad. Corp. S'holders Litig.*, 802 A.2d 285, 289 (Del. 2002) (refusing to address appellant's standing to object to class action settlement because that issue had not been raised in the trial court).

Given the conflicting positions taken by defendants, this is not a case where we should depart from our general rule insisting that non-jurisdictional arguments

140 (Tex. 1987) ("A judgment is void only when it is apparent that the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court."); *Yasuda Fire & Marine Ins. Co. v. Criaco*, 225 S.W.3d 894, 898 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The concurring opinion contends that the supreme court has departed from *Kazi*'s general rule that failure to meet a statutory prerequisite is not a jurisdictional defect. But the four cases it cites do not support a departure here. Two of the cases involved statutes showing a clear legislative intent to give administrative agencies exclusive original jurisdiction over certain disputes until their remedies are exhausted. *See City of Houston v. Rhule*, 417 S.W.3d 440, 442–43 (Tex. 2013); *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 502–03 (Tex. 2006). This exception to the *Kazi* rule does not fit our case because the settlement and Lapiner's objection do not fall within any statutorily created system of exclusive administrative review. The concurrence's third case addressed whether a party lacked a justiciable interest in the relief sought and thus lacked constitutional standing, a separate issue I address in footnote 6 below. *See In re John G. & Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522–23 (Tex. 2010) (citing *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304 (Tex. 2008) (discussing constitutional standing)). And the concurrence's fourth case is consistent with *Kazi*: although it held that a step-grandfather lacked standing under the Family Code to sue for access to a child, the court did not characterize his failure to meet the statutory prerequisites as a jurisdictional defect. *See In re Derzapf*, 219 S.W.3d 327, 331–33 (Tex. 2007) (orig. proceeding). Further, unlike here, the statutory standing objection in *Derzapf* was raised in the trial court.

11

be preserved in the trial court. As pointed out above, defendants argued the trial court should strike Lapiner's intervention because he did not own Isramco stock at the time of the alleged wrongdoing. Yet they expressly represented to the trial court that Lapiner would not be harmed by striking his intervention because he could still proceed in his capacity as an objector. The trial court did strike Lapiner's intervention, and Lapiner elected not to brief any challenge to that decision. Defendants then reversed their position, arguing for the first time on appeal that the timing of Lapiner's stock ownership also deprived him of standing to object, so his appeal should be dismissed. Because defendants did not make this argument—and indeed argued to the contrary—in the trial court, we should refuse to address it now.

The concurring opinion cites numerous cases in support of its conclusion that Lapiner lacked standing to object to the proposed settlement and to appeal the trial court's approval of the settlement. The cases do not support that conclusion, however, because they do not address the circumstances presented here. Most of the cited cases simply apply the general rule that defects in subject-matter jurisdiction cannot be waived and may be raised for the first time on appeal; they do not suggest that a trial court lacks jurisdiction to consider a shareholder's timely objection to the proposed settlement of a pending derivative suit over which the trial court indisputably has subject-matter jurisdiction.[5]

_____

[5] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993) (addressing challenge raised for first time on appeal to business association's standing to seek declaration that statutes authorizing agencies to assess fines were unconstitutional); *Schwartzott v. Etheridge Prop. Mgmt.*, 403 S.W.3d 488, 498–99 & n.4 (Tex. App.—Houston [14th Dist.] 2013, no. pet.) (addressing challenge raised for first time on appeal to condominium owners' standing to sue owners' association, and concluding that dispute went to merits of claims rather than standing); *Trojacek v. Estate of Kveton*, No. 14-07-00911-CV, 2009 WL 909591, at *3 (Tex. App.—Houston [14th Dist.] April 7, 2009, no pet.) (mem. op.) (holding *sua sponte* that appellant, even though she was a party in the trial court, did not have standing to appeal probate court's judgment rescinding deeds concerning real property in which she had no interest); *Saudi*

The concurrence does cite one case in which the First Court of Appeals affirmed the trial court's grant of a plea to the jurisdiction on the ground that the plaintiff lacked standing to commence a derivative suit because he did not own stock at the time suit was filed. *Somers ex. rel EGL, Inc. v. Crane*, 295 S.W.3d 5, 13–15 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). It also cites a memorandum opinion in which the First Court affirmed the trial court's denial of a motion to dismiss a class-action suit for lack of subject-matter jurisdiction, holding that the shareholders of a corporation that ceased to exist through merger had standing to assert direct (not derivative) claims that the corporate directors breached their fiduciary duties in approving the merger. *Pate v. Elloway*, No. 01-03-00187-CV, 2003 WL 22682422, at *1–3 (Tex. App.—Houston [1st Dist.] Nov. 13, 2003, pet. denied) (mem. op.). Those cases did not involve settlements or objections. Yet the concurrence relies on them in asserting that unless a shareholder can meet the statutory standing requirements to commence his own derivative suit, the trial court lacks subject-matter jurisdiction to consider his objection to the settlement of such a suit. That is not what those cases hold.

The First Court's cases do not address the issue presented here: everyone agrees that our case concerns an objection to the settlement of a derivative suit that was instituted by proper plaintiffs and over which the trial court had subject-matter jurisdiction. Moreover, the First Court's characterization of the issues in its cases as jurisdictional cannot overrule the supreme court's holding that failure to establish a statutory prerequisite to suit is not a jurisdictional defect. *Dubai Petrol. Co.*, 12 S.W.3d at 76–77. In any event, nothing in the First Court's cases turned on

---

*v. Brieven*, 176 S.W.3d 108, 113, 117 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that voidness of summary judgment in defamation case could be asserted for first time on appeal only if trial court lacked subject-matter jurisdiction to render judgment, and concluding court had jurisdiction).

13

whether the alleged defects were statutory or jurisdictional: the proper remedy if the defects were proven was dismissal either way, and because the defects had also been challenged in the trial court, there was no need to consider whether they could be raised for the first time on appeal. As the U.S. Supreme Court has observed, courts sometimes mislabel "elements of a cause of action as jurisdictional limitations, particularly when that characterization [is] not central to the case, and thus [does] not require close analysis." *Reed Elsevier*, 559 U.S. at 161.

Applying the jurisdictional label where it does not belong has the pernicious effect of opening seemingly final judgments to collateral attack in perpetuity. *See Dubai Petrol. Co.*, 12 S.W.3d at 76 ("When . . . it is difficult to tell whether the parties have satisfied the requisites of a particular statute, it seems perverse to treat a judgment as perpetually void merely because the court or the parties made a good-faith mistake in interpreting the law."). Thus, Texas courts should guard against "drive-by jurisdictional" rulings that miss the "critical difference[s] between true jurisdictional conditions and non-jurisdictional limitations on causes of action." *Reed Elsevier*, 559 U.S. at 161 (internal quotation marks omitted). Having scrutinized defendants' standing challenge in light of these principles, I conclude that it is a non-jurisdictional argument that Lapiner failed to meet the statutory prerequisites to file his objection. Accordingly, it cannot be raised for the first time on appeal.

## B.     Under Texas law, Lapiner had standing to object to the settlement at the trial court's invitation.

Even if defendants' challenge were jurisdictional in nature or had been raised below, the trial court did not abuse its discretion under Texas law by inviting and considering Lapiner's objection. While I agree with my concurring colleague that Delaware law governs a shareholder's ability to institute or maintain a

14

derivative action on behalf of Isramco, it is Texas law—not Delaware law—that governs the procedure for the trial court's approval of a proposed settlement of a derivative suit. As explained below, Texas law gives the trial court discretion to determine who should receive notice of a proposed settlement so they may object if they believe it is in their best interest to do so. Because the trial court acted well within this discretion by ordering that Lapiner and other shareholders be notified of the proposed settlement and their right to file an objection, I conclude that Lapiner had standing to object.

Under the relevant Delaware statute, as well as its Texas equivalent, a shareholder must own stock in the corporation at the time of the alleged wrongdoing in order to institute or maintain a derivative suit on the corporation's behalf. Del. Code Ann. tit. 8, § 327 (2011) ("In any derivative suit instituted by a stockholder of a corporation, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which such stockholder complains . . . ."); *see also* Tex. Bus. Orgs. Code Ann. § 21.552 (West 2012). Here, Lapiner became a shareholder after the alleged wrongdoing, but that simply means Lapiner could not file his own derivative suit or intervene in the pending derivative suit. Lapiner did not file his own suit, and his appellate briefing does not challenge the trial court's order striking his intervention.

Section 327 of the Delaware Code does not discuss who may object to a proposed settlement in a derivative case, however. Even if it did, approval of a proposed settlement and notice of an opportunity to object to that settlement are addressed in a separate statute, section 21.560 of the Texas Business Organizations Code. This statute applies here because section 21.562(a) of the Business Organizations Code classifies section 21.560 as procedural. Tex. Bus. Orgs. Code Ann. § 21.562(a); *see Moonlight Inv., Ltd. v. John*, 192 S.W3d 890, 894 (Tex.

15

App.—Eastland 2006, pet. denied) ("Section 21.562's exclusion of Sections 21.555, 21.560, and 21.561—'procedural provisions' that do not relate to the internal affairs of the foreign corporation—indicates that the legislature did not intend to except derivative shareholder proceedings from the general rule that Texas procedural law applies even in cases where a foreign corporation is involved.").

Section 21.560(b) provides that "if the court determines that a proposed settlement may substantially affect the interests of other shareholders," it "shall direct that notice be given to the affected shareholders." Tex. Bus. Orgs. Code Ann. § 21.560(b). By using the terms "affected" and "other" shareholders, rather than limiting notice to the group of shareholders who could maintain a derivative proceeding themselves under section 21.552 (which mirrors Section 327 of the Delaware Code), section 21.560(b) permits the group of shareholders who are entitled to notice and an opportunity to object to be broader than the group of shareholders who could initiate and maintain a derivative proceeding. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (stating that when construing a statute, a court must presume every word of a statute was used for a purpose and that every word excluded from a statute was excluded for a purpose).

As the notice quoted above shows, the trial court exercised its discretion to put all Isramco shareholders as of August 15, 2011—which included Lapiner—in the group of affected shareholders who were provided notice of the settlement and the right to file an objection to it. Because Lapiner was a shareholder of Isramco at the time of the settlement, which requires governance reforms as well as a substantial payment of attorneys' fees by Isramco to plaintiffs' counsel, the value of Lapiner's shares will be affected by the trial court's approval of the settlement.

16

*See Christian v. ICG Telecom Canada, Inc.*, 996 S.W.2d 270, 274 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (stating that all shareholders are indirectly affected by and benefit from a derivative lawsuit); *see also Kaplan v. Rand*, 192 F.3d 60, 67 (2d Cir. 1999) ("We think that a shareholder who objects to the payment of a fee from corporate funds in compensation of attorneys who have brought a derivative action on behalf of the corporation has an interest that is affected by the judgment directing payment of the fee."). Accordingly, I would hold that the trial court did not abuse its discretion when it determined under section 21.560(b) that Lapiner was an affected shareholder entitled to notice of a right to object to the proposed settlement, and thus Lapiner had standing to object to the settlement.[6]

Other courts agree that shareholders who receive notice of a proposed settlement may object regardless of whether they could institute or maintain the action themselves. *Cohen v. Young*, 127 F.2d 721, 724 (6th Cir. 1942) (treating an objector responding to a trial court's notice of proposed settlement like "a defendant who is summoned by process into court and after an adverse ruling has the right to appeal," and holding dismissal of objector's intervention was "not

---

[6] I note that neither defendants nor my concurring colleague argue that Lapiner lacks standing as Texas courts understand that term in its jurisdictional sense. Nor could such an argument succeed. The Texas Constitution limits courts' subject-matter jurisdiction to cases involving a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court. *See Heckman*, 369 S.W.3d at 154–56; *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). Lapiner's interest in the settlement as a current shareholder easily meets this constitutional threshold. This derivative suit involves disputed allegations by plaintiffs that the individual defendants engaged in related-party transactions with Isramco that violated their fiduciary duties and caused concrete injury to Isramco, and the dispute was resolved by the trial court's judgment approving the settlement. Moreover, both defendants and the concurrence acknowledge that an Isramco shareholder at the time of the alleged wrongdoing would have standing to object to the proposed settlement. But as discussed above, objectors who became shareholders after the wrongdoing and before the proposed settlement are likewise asserting an injury to the value of their shares if the settlement is approved. Thus, I see no constitutional reason why timing of share purchase should matter in determining standing to object to a settlement.

decisive"); *see also Kaplan*, 192 F.3d at 66 (holding that appellant who properly filed an objection in accordance with the notice he received from the trial court had standing to appeal); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1443 n.2 (10th Cir. 1995) ("To merely object to the settlement of a derivative action, however, the objector apparently need only own stock in the corporation at the time of the settlement hearing, and appear at the settlement hearing to raise his or her objections."); *Saylor v. Bastedo*, 78 F.R.D. 150, 152–53 (S.D.N.Y. 1978) (holding non-contemporaneous shareholder's status is that of an objector). Also, as discussed in Part II below, most courts hold that an objector does not need to intervene to challenge the settlement of a derivative suit, so there is no reason an objector should have to meet the test for intervention. *See, e.g., City of San Benito*, 109 S.W.3d at 755 ("Requiring intervention prior to the settlement fairness hearing creates more work for all involved with no corresponding benefit.").

Because a Texas procedural statute defines which shareholders are entitled to notice and an opportunity to object to a proposed settlement in a derivative suit, the Delaware cases cited in the concurring opinion do not control. In any event, those cases are not on point. The concurring opinion relies primarily on *Leighton v. Lewis*, an unpublished but precedential order of the Delaware Supreme Court. 1990 WL 84704 (Del. May 25, 1990). *Leighton* involved four class actions and three derivative suits that arose out of a merger and were eventually consolidated. *Id.* at *1–*2. Leighton, a shareholder who acquired his shares after the date for shareholders to be considered part of the certified class, attempted to intervene. *Id.* The trial court denied his motion to intervene and he filed an appeal. *Id.* at *2.

The Delaware Supreme Court began by observing that "an objector who purchases a claim by buying stock after the alleged wrongdoing has occurred lacks standing to challenge the wrongdoing in a derivative capacity." *Id.* The court then

held that "Leighton lacked the fundamental standing to intervene in the Court of Chancery and now lacks standing to pursue this appeal and present objections to the settlement at issue." *Id.* at *3. Despite the Delaware Supreme Court's use of terms such as "objector" and "objections," there is nothing in the opinion establishing that Leighton did anything more than attempt to intervene in the litigation. Instead, the primary point of the case is the court's holding in paragraph ten that Leighton lacked "standing to challenge the wrongdoing in a derivative capacity" because he did not own stock at the time of the wrongdoing. *Id.* at *2. Finally, the court specifically stated that the only issue properly before the court was the question whether Leighton had standing to intervene. *Id.* at *3. In this appeal, by contrast, Lapiner is not challenging the order striking his intervention.

The concurring opinion next cites *In re Beatrice Companies*, 1987 WL 36708 (Del. Feb. 20, 1987). In *Beatrice*, it appears that the shareholder there did not purchase his stock until after he reviewed the proposed settlement. *Id.* at *3. It also appears the shareholder did not challenge the fairness of the settlement either in the trial court or on appeal. *Id.* at *2–3. Moreover, the court rejected the shareholder's claims based on the Delaware statute stating that a stockholder cannot maintain a derivative action to challenge corporate wrongdoing if he did not own the stock at the time of the wrongdoing. *Id.* at *3. *Beatrice* does not apply here because there is no indication that Lapiner bought his stock after he reviewed the proposed  settlement, he is challenging the fairness of the settlement, and he is no longer seeking to challenge the wrongdoing in a derivative capacity through an intervention.

For these reasons, the defendants' belated challenge to Lapiner's standing to object does not provide a basis for dismissing this appeal. I would therefore overrule the first ground for dismissal.

19

**II. Lapiner is a deemed party who may appeal the trial court's approval of the settlement over his invited objection.**

Turning to the second ground, the concurring opinion asserts that even if Lapiner could object in the trial court, he was not entitled to appeal that court's denial of his objection at all because he was not a "party" under the appellate rules. The plurality opinion makes a related point, contending that Lapiner's notice of appeal was untimely because he was not a "party" and thus his motion for new trial did not extend the deadline to file a notice of appeal. In other words, my colleagues believe that in order for Lapiner to appeal the trial court's approval of the settlement over his objection, he had to become a formal party by intervening successfully in this derivative suit.

I respectfully disagree with their resolution of this important question of first impression in Texas. Not only is my colleagues' approach contrary to analogous Texas precedent and decisions in many other jurisdictions, it will have substantial negative consequences. Their approach insulates potentially collusive settlements that often include large fee awards from searching scrutiny, creates procedural traps for unwary litigants, and runs afoul of the supreme court's consistent preference for deciding cases on the merits.

**A. The doctrine of virtual representation applies to shareholders who object to derivative-suit settlements.**

I conclude that the doctrine of virtual representation addressed in *Devlin* and *City of San Benito* applies to shareholders who object to the settlement of a derivative suit in the trial court, deeming them to be parties who may appeal. In *City of San Benito*, the supreme court explained that an appellant is a deemed party under the doctrine when it meets three requirements: (1) it is bound by the judgment; (2) its privity of estate, title, or interest appears from the record; and (3) there is an identity of interest between the appellant and a party to the judgment.

20

109 S.W.3d at 755.[7] The supreme court went on to recognize that the most important consideration is whether the appellant is bound by the judgment. *Id.*; *cf. BASF FINA Petrochem. Ltd. v. H.B. Zachry Co.*, 168 S.W.3d 867, 870–71 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that appellant had standing to appeal because it was bound by the judgment even though it did not meet the second requirement). Here, Lapiner meets all three requirements of the virtual representation doctrine.[8]

### 1.    *Lapiner meets the three requirements of the doctrine.*

***Lapiner is bound by the judgment.*** Both the plurality and concurring opinions contend Lapiner does not meet the first requirement of the virtual representation doctrine because he is not bound by the judgment. I disagree because the judgment expressly binds each Isramco shareholder.

As the above-quoted language shows, the judgment approving the settlement binds "each Isramco shareholder," stating that they "have fully, finally, and forever released, relinquished and discharged" claims against defendants and related persons, and that they are "barred and enjoined from instituting and/or prosecuting any other action against" those persons asserting those claims. The parties have not addressed whether the judgment binds all those who hold Isramco shares on the

---

[7] The Fifth Circuit applies a related but distinct doctrine for determining when nonparties may appeal, asking whether the nonparties actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the nonparties have a personal stake in the outcome. *E.g., Castillo v. Cameron County, Tex.*, 238 F.3d 339, 349–50 (5th Cir. 2001).

[8] Because I conclude Lapiner meets these requirements, I need not address whether he may also appeal because he has no other legal remedy to contest the trial court's denial of his request for attorneys' fees and objection. *See BASF*, 168 S.W.3d at 870–71 (holding that third party seeking to be reimbursed for costs incurred in responding to discovery request had standing to appeal because its interests were directly represented by its own counsel in the trial court, it was effectively bound by the trial court's final order of dismissal, the other party would have had the right to appeal the trial court's ruling if it had granted the request for reimbursement, and the third party had no other legal remedy to contest the trial court's denial of its request).

21

yet-to-occur effective date of the settlement, or only those who held shares on the August 15, 2011 date prescribed in the notice approved by the trial court. Either way, it is undisputed that Lapiner bought his shares before August 15, 2011, so he is expressly bound by the judgment.[9]

More generally, courts and commentators recognize that judgments in derivative suits bind non-intervening shareholders. *See Smith v. Waste Mgmt, Inc.*, 407 F.3d 381, 386 (5th Cir. 2005) (holding res judicata barred plaintiff's derivative suit because of a final judgment in a prior derivative lawsuit); *Nathan v. Rowan*, 651 F.2d 1223, 1226 (6th Cir. 1981) (same); 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1840 (3d ed. 1998) (collecting cases) ("In a sense, the derivative suit is an exception to the general rule that one is not bound by an in-personam judgment in an action in which he is not a party, inasmuch as all nonparty shareholders will be bound and cannot subsequently assert the right advanced in the derivative action."). Based on these authorities, as well as the plain language of the judgment, I conclude that Lapiner is bound by the judgment and meets the first and most important requirement of the virtual representation doctrine.

The plurality opinion cites two cases for the proposition that Lapiner is not bound by the judgment because derivative claims are for injury to the corporation. But neither case addresses who is bound by the judgment in a derivative suit, and neither involves facts similar to those here. In *Swank v. Cunningham*, the court held that the plaintiffs (1) did not have standing to assert direct causes of action seeking damages for themselves because their claims alleged only damages to the

---

[9] 15A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3902.1 & nn.35, 37 (2d ed. 1992) (collecting cases) ("The easiest cases for permitting nonparty appeal are those in which a court order directly binds the nonparty by name."); *see, e.g., SEC v. Enterprise Trust Co.*, 559 F.3d 649, 651–52 (7th Cir. 2009); *Maiz v. Virani*, 311 F.3d 334, 338–39 (5th Cir. 2002); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1277, 1285 (9th Cir. 1992).

corporation, and (2) did not have standing to pursue derivative claims because they owned stock options, not shares of stock. 258 S.W.3d 647, 661–64 (Tex. App.—Eastland 2005, pet. denied). Here, Lapiner has always recognized that the claims being settled are derivative, and it is undisputed that he owned shares of stock, not stock options. Similarly, in *Redmon v. Griffith*, the court held that the plaintiff shareholders had standing to bring their causes of action because they alleged individual claims for personal damages and not derivative claims on behalf of the corporation. 202 S.W.3d 225, 235 (Tex. App.—Tyler 2006, pet. denied). Again, because no one disputes the present case involves only derivative claims, *Redmon* is inapposite.

The concurring opinion suggests that the judgment does not really bind Lapiner because he only objected to the settlement of derivative claims he could not assert himself, not to the release of his individual claims, which is in any event void. To the contrary, Lapiner objected to "the complete release of all liability of Defendants" in exchange for terms that "provide[] no real benefit to Isramco," and that require it to pay $1 million in attorneys' fees "to the detriment of current shareholders." In his brief on appeal, Lapiner challenges the denial of his objection on the same grounds. Nothing in the record or in the cases cited by the concurrence supports parsing Lapiner's objection in a different manner.[10]

*An identity of interest between Lapiner and a party appears from the record.* Lapiner also meets the second and third requirements of the virtual

_____

[10] No one has asked us to consider whether the portion of the judgment releasing the claims of individual shareholders is void, so I would not address that issue. Lapiner himself did not object that his individual claims were included in the release, but that the settlement was not fair given what he and other shareholders were getting in exchange for the release. In any event, if the concurrence were correct that the portion of the judgment releasing Lapiner's individual claims is void, that conclusion would further support his ability to file a notice of appeal challenging a void judgment that purports to bind him. *Cf. In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012) (void judgment "may be challenged at any time").

23

representation doctrine because there is an identity of interest between him and the plaintiffs, and this privity of interest appears from the record. Specifically, the record shows that Lapiner has owned Isramco stock since at least August 15, 2011. Thus, he is in privity with the plaintiff shareholders, who represented the interests of the corporation and nonparty shareholders like him in this derivative suit. *Mobil Exploration & Producing U.S., Inc. v. McDonald*, 810 S.W.2d 887, 889–90 (Tex. App.—Beaumont 1991, writ denied) (stating that those in privity include those whose interests are represented by a party to the action); *see also Nathan*, 651 F.2d at 1226 ("[I]n shareholder derivative actions arising under [Federal Rule of Civil Procedure] 23.1, parties and their privies include the corporation and all nonparty shareholders."); *Mass. v. Davis*, 168 S.W.2d 216, 221 (Tex. 1942) (recognizing that when an injury occurs to a corporation, "each shareholder suffers relatively in proportion to the number of shares he owns, and each will be made whole if the corporation obtains restitution or compensation from the wrongdoer"). The trial court's final judgment recognized this privity by binding both Lapiner and the plaintiffs to its terms. *See Johnson v. Johnson*, 841 S.W.2d 114, 115 (Tex. App.—Houston [14th Dist.] 1992, no writ) (holding doctrine of virtual representation requires appellant to show "he is bound as a privy to the judgment").[11]

Citing *BJVSD Bird Family Partnership, L.P. v. Star Electricity, L.L.C.*, 413 S.W.3d 780, 785–86 (Tex. App.—Houston [1st Dist.] 2013, no pet.), the plurality opinion concludes Lapiner does not satisfy the privity requirement of the virtual representation doctrine. But *BJVSD* did not involve a derivative suit; instead, it held only that a limited partner not bound by the judgment could not invoke the

---

[11] The plurality opinion points out that Lapiner differs from the plaintiffs in that he acquired his shares after the alleged wrongdoing and thus could not institute or maintain this suit himself. This timing difference, however, did not prevent plaintiffs from representing the interests of all shareholders (including Lapiner) by filing this suit seeking relief for the corporation, and by agreeing to a settlement judgment that binds all shareholders.

doctrine to challenge post-judgment orders affecting the partnership and its general partner. *Id.*

Moreover, *BJVSD* cites *City of San Benito* for the proposition that the doctrine applies when the named parties "are unable to adequately represent their own interests and thus, indirectly, those of their . . . members." *Id.* at 785; *see also Devlin*, 536 U.S. at 9 (noting objector's right to appeal not adequately protected by class representative because their "interests by definition diverge" once named parties reach a settlement that is approved over objection); *Rosenbaum*, 64 F.3d at 1442. That is Lapiner's contention here: the shareholder plaintiffs did not adequately represent the interests of Isramco and its shareholders because they entered into an objectionable settlement that binds the company and all shareholders. The doctrine of virtual representation allows Lapiner to pursue that contention on appeal. In fact, the lack of an opt-out procedure in a derivative action (as compared to the class action in *City of San Benito*) increases the need to allow shareholders who believe that a settlement binding them is not fair to file an objection in the trial court and to appeal the trial court's decision to deny that objection and approve the settlement. *See Devlin*, 536 U.S. at 10–11; *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1310 (3d Cir. 1993) (stating that the risk of collusion in negotiating derivative suit settlements should caution against creating obstacles to challenging those settlements).

\*     \*     \*

Because Lapiner meets all three elements of the virtual representation doctrine, he qualifies as a deemed party who did not need to intervene in order to appeal the trial court's approval of the settlement over his objection. As a deemed party, his motion for new trial filed within 30 days after judgment served to extend the appellate timetable, so his notice of appeal filed within 90 days after judgment

25

was timely. *See* Tex. R. App. P. 26.1(a)(1).

### 2. Other courts and commentators agree that objecting shareholders may appeal without intervening in the trial court.

Lapiner may also appeal the denial of his objection for a second, independent reason: the trial court invited the objection. "[T]he majority of courts to consider the question," as well as respected commentators, agree that a current shareholder who objects to the settlement of a derivative suit need not intervene in order to appeal the denial of his objection. *In re UnitedHealth Group Inc. S'holder Derivative Litig.*, 631 F.3d 913, 917 n.2 (8th Cir. 2011); *see, e.g., Kaplan*, 192 F.3d at 67; *Rosenbaum*, 64 F.3d at 1443; *Bell Atl. Corp.*, 2 F.3d at 1310; *Cohen*, 127 F.2d at 724 (holding that shareholder who unsuccessfully tried to intervene but also objected to derivative settlement in response to trial court's notice had the right to appeal court's decision approving the settlement); *Saylor*, 78 F.R.D. at 152–53; *Ackert v. Ausman*, 217 F. Supp 934, 935–36 (S.D.N.Y. 1963) ("There can be no doubt that a stockholder who appears pursuant to notice and has his objections overruled, acquires standing for purposes of appeal under both federal law . . . and New York law."); *Neponsit Inv. Co. v. Abramson,* 405 A.2d 97, 101 (Del. 1979) (affirming trial court's approval of a derivative suit settlement in appeal brought by shareholders who objected to settlement during fairness hearing); *see also* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1839 ("An objector to the settlement may appeal the court's approval of the compromise, and the objector need not formally intervene to be permitted to appeal."); 15A Wright & Miller § 3902.1.[12]

This nearly universal recognition of an objector's right to appeal is

---

[12] *But see Felzen v. Andreas*, 134 F.3d 873, 876 (7th Cir. 1998), *aff'd by an equally divided court sub nom. Cal. Pub. Emp. Ret. Sys. v. Felzen*, 525 U.S. 315 (1999) (per curiam).

unsurprising because the rule is a sensible one. The Texas Business Organizations Code requires that all settlements of derivative suits receive trial court approval. Tex. Bus. Orgs. Code Ann. § 21.560. It also gives the trial court discretion to determine the affected shareholders who should be notified of the proposed settlement and invited to file an objection to that settlement if they believe it is not fair. *Id.* Thus, shareholders who file an objection to a derivative suit settlement are directly responding to a trial court invitation when they do so. *See Kaplan*, 192 F.3d at 66 ("Rand properly filed objections to the proposed allowance of attorney's fees in accordance with the notice given as required by the district court, and . . . such an objector in a stockholders' derivative action has standing to prosecute an appeal."); *Cohen*, 127 F.2d at 724 ("Appellant appeared in court in answer to the court's notice to show cause why the settlement should not be approved. This being the case, he was like a defendant who is summoned by process of court and after an adverse ruling has the right to appeal." (citing *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 495 (1933))). It would make little sense to require the trial court to invite and consider objections from shareholders, but then prevent objecting shareholders from appealing the trial court's decision to deny their objections and approve the settlement. *Kaplan*, 192 F.3d at 67.

Moreover, requiring an objector to intervene in the litigation in order to appeal the trial court's denial of his objection would create "more work for all involved with no corresponding benefit." *City of San Benito*, 109 S.W.3d at 755; *see also Devlin*, 536 U.S. at 8 (recognizing that requiring an objector to intervene in a class action in order to appeal the approval of a settlement "would only add an additional layer of complexity before the appeal of the settlement approval may finally be heard"). The defendants themselves recognized as much when they represented to the trial court that if it struck Lapiner's intervention, he would not

27

be harmed because he had timely objected and could proceed on that basis to contest the fairness of the pending settlement. Under the authorities discussed above, Lapiner should likewise be allowed to appeal the trial court's approval of the settlement over his objection. I would therefore overrule appellees' second ground for dismissal.

### B. Foreclosing appellate review of objections will have substantial negative consequences.

Finally, Texas courts should not adopt my colleagues' rule that an objector must intervene successfully in order to appeal the approval of a settlement because it will have substantial negative consequences. One is that curtailing appeals will insulate potentially collusive settlements from searching scrutiny. In derivative litigation generally, shareholders "lack the incentive and information to police settlements," which creates a risk "that plaintiffs' counsel and defendants will structure a settlement in which plaintiffs' attorneys' fees are disproportionate to any relief obtained for the corporation." *Bell Atl. Corp.*, 2 F.3d at 1309–10.[13] Moreover, because plaintiffs' counsel and defendants "can be expected to spotlight the [settlement] proposal's strengths and slight its defects, . . . objectors play an important role" in giving judges the benefit of an adversary process by providing "access to information on the settlement's merits." *Bell Atl. Corp.*, 2 F.3d at 1310; *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374 (N. D. Cal. 1989). Given this potential for collusion and lack of information, we should avoid imposing obstacles to objections and should give them searching review at both the trial and appellate levels. *See Bell Atl. Corp.*, 2 F.3d at 1310 (cautioning against creating obstacles to challenging settlements, holding that objector could appeal,

---

[13] *See also Rosenbaum*, 64 F.3d at 1442–43; John C. Coffee, Jr., *Understanding the Plaintiff's Attorney: The Implications of Economic Theory for Private Enforcement of Law Through Class & Derivative Actions*, 86 Colum. L. Rev. 669, 714–720 (1986).

and reasoning that "[a]ssuring fair and adequate settlements outweighs concerns that non-intervening objectors will render the representative litigation 'unwieldy'").[14]

The concurring opinion responds by expressing concern that corporations will face an avalanche of appeals if anyone who owns stock in a corporation involved in any type of lawsuit (derivative or otherwise) can appeal from a settlement of that suit. But that is a far broader right to appeal than the limited one I would adopt based on the authorities discussed above. Under my proposed rule, when a trial court determines a shareholder is affected by a proposed settlement of a derivative suit and therefore is entitled to notice, and the shareholder timely responds to the notice with an objection, the shareholder is entitled to appeal a trial court ruling denying that objection. As the supreme court recognized in rejecting a similar concern in *City of San Benito*, requiring non-intervening shareholders to object in the trial court "will significantly reduce the number of appeals" and ensure that cases "will not become unmanageable." 109 S.W.3d at 756.[15]

A second consequence of making intervention a prerequisite to appeal is that it creates uncertainty and traps for unwary litigants. Shareholders who have been invited by the trial court to object may be entirely unaware that they also need to

---

[14] *See also* Joan Steinman, *Irregulars: The Appellate Rights of Persons Who Are Not Full-Fledged Parties*, 39 Ga. L. Rev. 411, 475–481 (2005). Because my colleagues do not reach the merits of Lapiner's challenge, I likewise express no opinion on whether the settlement and award of attorneys' fees in this particular case is fair, reasonable, and adequate.

[15] I disagree with the concurring opinion that this holding runs afoul of the general principle that boards of directors manage corporations. The settlement of any derivative suit (as opposed to its dismissal) is, by its very nature, a recognition that the board of directors' authority over the conduct of corporate litigation has been displaced. *See In re Crown Castle Int'l Corp.*, 247 S.W.3d 349, 355–56 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding) ("The derivative shareholder suit is an action in which the shareholder steps into the shoes of the corporation and usurps the board of directors' authority to decide whether to pursue the corporation's claims.").

intervene—or even, as here, may be told (wrongly) that they do not need to intervene—to preserve their ability to challenge the trial court's ruling on their objection. Also, it is difficult to understand how an intervention requirement would work. Here, Lapiner did attempt to intervene prior to judgment, and his notice of appeal does in fact challenge the order striking his intervention,[16] although he later decided not to brief that issue. Does the notice of appeal control the determination of our jurisdiction over a putative party's appeal, or does Lapiner's decision not to brief that issue somehow retroactively deprive him of his "party" status as a stricken intervenor? There is no majority opinion to provide an answer.

In addition, the plurality opinion cites cases holding that a person filing a *post*-judgment plea in intervention cannot extend the appellate timetable by filing a motion for new trial. *Ante,* at 7-8. Does its reliance on those cases mean that an unsuccessful *pre*-judgment intervenor like Lapiner cannot extend the appellate timetable by filing a motion for new trial? Again, there is no authoritative answer. The plurality opinion also suggests that because Lapiner is not a "party," the plain language of Rule 26.1(a) did not allow him to extend the time to appeal by filing a motion for new trial.[17] Courts have not interpreted the term "party" so narrowly, however. Rule 25.1(b) provides that "[t]he filing of a notice of appeal by any party invokes the appellate court's jurisdiction," and Texas courts have allowed persons

---

[16] The decision to strike Lapiner's intervention is appealable. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657–58 (Tex. 1990) (holding trial court abused its discretion when it struck the appellant's intervention); *City of Austin v. Quick*, 930 S.W.2d 678, 683 (Tex. App.—Austin 1996) (affirming trial court's striking of appellant's intervention), *aff'd*, 7 S.W.3d 109 (Tex. 1998).

[17] In fact, the plurality opinion suggests that this conclusion applies "without regard to whether Lapiner must intervene in order to have standing to appeal." I do not understand the purpose of the quoted language. If Lapiner had successfully intervened, presumably even the plurality opinion would conclude that his motion for new trial extended the appellate timetable.

who qualify as deemed parties under the doctrine of virtual representation to file a valid notice of appeal as explained above. I see no reason to create a trap by interpreting the term "party" differently in these two rules. I hope that pointing out some of the perils and pitfalls that lie ahead will be of some use to the litigants who must navigate this treacherous terrain in the future.

In my view, making a confusing and uncertain intervention requirement a prerequisite for appeal is inconsistent with the Texas Supreme Court's often-repeated instruction to reach the merits of an appeal whenever reasonably possible. *See, e.g., Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008); *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997). As explained above, an intervention requirement will yield far more problems than benefits, and that requirement is not "absolutely necessary" to effect the purpose of the rule that only parties may appeal because Lapiner qualifies as a party under the virtual representation doctrine. *Verburgt*, 959 S.W.2d at 617. Accordingly, I would hold that Lapiner properly appealed the trial court's approval of the settlement over his objection.

## CONCLUSION

Lapiner owned Isramco stock when the named parties to this derivative litigation negotiated a settlement. The trial court, in the exercise of its discretion, determined that all current owners of Isramco stock, including Lapiner, could be affected by the proposed settlement and ordered that they be notified of the settlement and their right to object. Lapiner timely filed an objection, which the trial court considered and denied. The trial court then signed a final judgment approving the proposed settlement, and Lapiner filed this appeal. My colleagues conclude that his appeal must be dismissed because Lapiner did not become a party in the trial court by intervention. I disagree because Lapiner is a deemed party under the doctrine of virtual representation, and no challenge to his ability to object

31

was preserved in the trial court.  I would overrule both grounds for dismissal asserted by appellees, deny their motions to dismiss, and address the merits of Lapiner's appeal.  Because my colleagues, instead, dismiss this appeal, I respectfully dissent.

/s/      J. Brett Busby
Justice

Panel consists of Chief Justice Frost and Justices McCally and Busby.  (McCally, J., plurality) (Frost, C.J., concurring).