COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| KENNETH D. McKEOUGH, | § | No. 08-21-00057-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court at Law No. 3 |
| CAMELOT TOWNHOMES ASSOCIATION, INC., | § | of El Paso County, Texas |
| Appellee. | § | Cause No. 2019DCV3303 |

## MEMORANDUM OPINION

Appellant and Appellee have each filed a motion for rehearing of our opinion and judgment dated February 27, 2023. We deny both motions for rehearing, withdraw our opinion and judgment of said date, and substitute the following opinion it its place.

In separate appeals, Kenneth D. McKeough challenged the trial court's traditional and no-evidence summary judgments rendered against him and in favor of Camelot Townhomes Association, Inc. (Camelot).[1] Originally, we docketed the traditional motion in cause number 08-21-00026-CV, while the no-evidence motion was docketed in the instant cause. But based on the parties' agreed motion to consolidate filed during the pendency of both, we further considered the parties' request and determined consolidation was appropriate. The consolidation of the appeals is

---

[1] Before consolidation, this appeal only challenged the trial court's order granting Camelot's no-evidence summary judgment motion, signed February 11, 2021. The other appeal styled, *Kenneth D. McKeough v. Camelot Townhomes Ass'n*, No. 08-21-00026-CV, (Tex. App.—El Paso Feb. 27, 2023) (mem. op.), challenged the trial court's order granting Camelot's traditional summary judgment motion, signed November 10, 2020.

based on a Rule 11 agreement submitted to the United States Bankruptcy Court and to this Court. As a result, we have granted consolidation of the record of the first appeal docketed under cause number 08-21-00026-CV, with the record of this appeal docketed under cause number 08-21-00057-CV, and by separate opinion issued this same day, we dismiss cause number 08-21-00026-CV, based on that case being duplicative and unnecessary following the issuance of this opinion.

We address the trial court's rulings together in this consolidated appeal. We affirm the trial court's grant of traditional summary judgment on McKeough's breach of his obligation to pay condominium assessments and late fees, while we reverse the trial court's grant of a no-evidence summary judgment on McKeough's counterclaims on breaches of Camelot's obligation to repair and to provide records. We reverse the attorney's fees award and remand to the trial court for further proceedings consistent with this opinion.

## I. PROCEDURAL BACKGROUND

McKeough owns a condominium unit in Camelot Townhomes #2, a condominium regime declared under the Texas Condominium Act, located in El Paso, Texas.[2] *See* TEX. PROP. CODE ANN. § 81.002(5). Camelot, a Texas non-profit corporation, is the homeowners association for Camelot Townhomes #2. McKeough purchased his condominium in 2007. Neither party disputes they are bound by the terms of the Condominium's Declaration and Camelot's Bylaws.

On August 28, 2019, Camelot filed suit against McKeough alleging he failed to pay assessments and late fees as required under the Condominium's Declaration. Camelot's suit alleged McKeough accepted and was bound by the terms of the Condominium Declaration when he purchased his property and intentionally failed and refused to pay his assessment and late fees as required. As a result of McKeough's default, Camelot alleged it had been damaged in the sum of at least $3,325 for unpaid common assessments, special assessments, and late fees. As relief,

---

[2] Camelot's Declaration was made on November 20, 1980; and recorded in the real property records of the El Paso County Clerk's office on March 25, 1981.

Camelot sought judgment against McKeough in the amount of the unpaid fees, establishment of its right to foreclose on its Vendor's Lien, an order of foreclosure, attorney's fees and other costs. The petition attached the Condominium Declaration, McKeough's 2007 warranty deed, a letter demanding payment of fees and costs, and a copy of Camelot's ledger of fees and payments.

McKeough originally responded with a pro se original answer generally denying the claims and generally alleging that Camelot had breached the Declaration by non-repair of his attic and in breaching certain bylaws. McKeough then hired counsel and filed an amended answer entering a general denial. In contrast with the original answer, the amended answer did not present any allegation of breach on Camelot's part.

On July 10, 2020, Camelot filed a motion for traditional summary judgment on its monetary claim for outstanding assessments and request for permission to foreclose on McKeough's unit.[3] Camelot asserted it was entitled to summary judgment on its claim based on a breach of the obligation to pay assessment fees as McKeough stopped paying as of February 2019. Camelot attached evidence in support of its motion showing the terms of the Condominium Declaration and missed payments by McKeough.

McKeough soon filed a motion for leave to file an amended answer and counterclaims. Specifically, McKeough sought to bring counterclaims against Camelot asserting it breached the Condominium Declaration by failing to repair/remedy the common area above his unit. Additionally, McKeough alleged Camelot breached the Condominium Bylaws by not supplying certain records upon McKeough's request. The trial court granted McKeough's motion for leave to file an amended answer and counterclaims. Camelot filed an answer to McKeough's

---

[3] Camelot first moved for traditional summary judgment on December 31, 2019, on the outstanding assessments and its foreclosure suit. A month later, the trial court granted Camelot's motion. Upon McKeough's request, the trial court granted a new trial based on COVID-19 grounds.

counterclaims, including the affirmative defenses of failure to mitigate, waiver, laches, unclean hands, fraud, and estoppel.

McKeough also amended its answer to include affirmative defenses of offset and prior material breach. McKeough then responded to Camelot's motion for traditional summary judgment opposing the award of attorney's fees and arguing Camelot was the first to breach the Declaration. McKeough attached exhibits to its response asserting they raised genuine issues of material fact.

After additional replies and sur-replies by the parties, the trial court granted Camelot's motion in its entirety. The trial court awarded Camelot McKeough's outstanding assessment balance of $8,760, attorney's fees of $23,890.99, and court costs of $934.77. The trial court also awarded Camelot conditional attorney's fees on appeal. Lastly, the trial court granted Camelot's petition for judicial foreclosure and ordered it could move forward with foreclosure.

On November 11, 2020, a day after the trial court granted Camelot's traditional motion for summary judgment, Camelot filed a no-evidence motion for summary judgment on McKeough's counterclaims. Camelot alleged McKeough could not provide any evidence that he performed, tendered performance of, or was excused from his contractual obligations under the Condominium Declaration or the Bylaws. Furthermore, it alleged McKeough could not provide any evidence that Camelot had breached any obligation owed under the Condominium Declaration or Bylaws, or if it did, that McKeough did not sustain any harm.

Days later, Camelot filed a motion to sever its claims against McKeough so it could make final and enforce its traditional summary judgment. Camelot's motion described there were three causes of action before the trial court: (1) Camelot's claim against McKeough for unpaid assessments, which Camelot sought to sever, (2) McKeough's counterclaim for breach of the Declaration based on Camelot's alleged failure to repair his unit, and (3) McKeough's counterclaim for breach of the Bylaws based on Camelot's alleged failure to provide him certain

4

documents. Camelot asserted that McKeough's counterclaims did not arise out of the same transaction or occurrence that was the subject matter of Camelot's claims against McKeough. McKeough filed a response opposing severance, contending the parties' claims were interwoven and based on the same facts and issues. On December 10, 2020, the trial court granted severance of Camelot's claim for unpaid assessments and its suit to foreclose on the unit. Although the trial court ordered the severed action be made the subject of a separate action with a new style and cause number, no new number appeared in the blank line of the written order.

Meanwhile, on November 30, 2020, and before severance, McKeough responded to Camelot's no-evidence motion for summary judgment attaching his affidavit to assert he only stopped paying the assessment fees after Camelot failed to take any action to repair his unit. McKeough also asserted there was evidence of numerous written requests for repair made to Camelot by him. Lastly, he asserted he had evidence of his multiple written requests made by him to Camelot for disclosure of association records pursuant to the Bylaws and that Camelot breached by not providing the requested records.

On February 4, 2021, McKeough appealed the traditional summary judgment, but he appealed from the original cause number rather than from the severed cause.[4] On February 11, 2021, the trial court granted Camelot's no-evidence motion for summary judgment in its entirety. On April 9, 2021, McKeough also appealed the no-evidence summary judgment from the original cause number. The two notices of appeal resulted in two separate appeals pending in this Court, which we consolidated based on the parties' agreed motion and Rule 11 agreement.

## II.    ISSUES ON APPEAL

In total, McKeough presents three issues on appeal. First, McKeough contends the trial court erred in granting Camelot's no evidence summary judgment on his counterclaims for breach

---

[4] Although Appellees' brief in the dismissed appeal referenced the severed cause number as 2020DCV4040, no records from the severed case were part of the record in either appeal.

of contract and breach of bylaws. Second, he argues the trial court erred in granting Camelot's traditional summary judgment on its claims for assessment fees and its petition for foreclosure. Lastly, he urges the award of attorney's fees included in the trial court's grant of Camelot's traditional motion for summary judgment should be remanded to the trial court.

We address each issue individually.

## III.   STANDARD OF REVIEW

We review a summary judgment de novo. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). Summary judgment is appropriate on a traditional motion when the movant shows no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a. When, as in this case, the trial court's order granting summary judgment does not specifically state the grounds for granting the motion we must affirm the judgment if any grounds on which judgment is sought are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

In a no-evidence motion for summary judgment, the movant alleges that adequate time for discovery has passed, and the adverse party has failed to produce any evidence to support one or more essential elements of a claim for which the adverse party would bear the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). We review a no-evidence motion for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Once a no-evidence motion is filed, the burden shifts to the nonmoving party to present evidence that raises a genuine issue of material fact as to each element specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The trial court must grant a no-evidence motion for summary judgment unless the respondent produces summary judgment evidence raising a genuine issue of material fact. TEX. R. CIV. P. 166a(i). We will sustain a no-evidence challenge when:

(1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact.

*Fred Loya Ins. Agency, Inc., v. Cohen*, 446 S.W.3d 913, 918 (Tex. App.—El Paso 2014, pet. denied) (citing *Merriman*, 407 S.W.3d at 248). When reviewing a no-evidence summary judgment, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks*, 206 S.W.3d at 582.

A movant seeking traditional summary judgment must state the specific grounds for the motion and further show that no genuine issue of material fact exists, and it is entitled to judgment as a matter of law. *KCM Fin., LLC*, 457 S.W.3d at 79; *see also* TEX. R. CIV. P. 166a(c). If the movant satisfies this burden, the burden shifts to the nonmovant to provide evidence that raises a genuine issue of material fact, thus avoiding summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). In deciding whether a genuine issue of material fact precludes summary judgment, we must treat all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve all doubts in its favor. *Herrera v. Resignato*, 621 S.W.3d 835, 840 (Tex. App.—El Paso 2021, no pet.) (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)).

# IV.  CONDOMINIUM DECLARATIONS

"Condominium declarations are treated as contracts between the parties[,]" as are a condominium homeowners association's bylaws. *See Schwartzott v. Etheridge Prop. Mgmt.*, 403 S.W.3d 488, 498 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Bundren v. Holly Oaks Townhomes Ass'n, Inc.*, 347 S.W.3d 421, 434 (Tex. App.—Dallas 2011, pet. denied); *Monasco v. Gilmer Boating and Fishing Club*, 339 S.W.3d 828, 838 n.14 (Tex. App.—Texarkana 2011, no pet.). Unit owners in condominiums are understood to "accept the terms, conditions, and restrictions in their Condominium Declaration by acceptance of the deeds to the individual apartment units." *Pooser v. Lovett Square Townhomes Owners' Ass'n*, 702 S.W.2d 226, 230–31 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Certain sections of the Texas Uniform Condominium Act, including § 82.114, apply to condominiums for which the declaration was recorded before January 1, 1994. *See* TEX. PROP. CODE ANN. § 82.002(c). For a condominium for which the declaration was recorded before January 1, 1994, § 82.114 requires a condominium association to keep detailed financial records; a condominium information statement; the name and mailing address of each unit owner; voting records, proxies, and correspondence relating to amendments to the declaration; and minutes of meetings of the association and board. *See id.* § 82.114(a). All financial and other records of the association are to be reasonably available for examination by a unit owner. *Id.* § 82.114(b). A condominium association is also statutorily required to obtain annually an independent audit of the records, and the audit must be made available to unit owners. *Id.* § 82.114(c). A condominium owner's rights to inspect the association's books and records "is only limited by the requirement that the inspection be for any proper purpose." *Shioleno v. Sandpiper Condos. Council of Owners, Inc.*, No. 13-07-00312, 2008 WL 2764530, at *3 (Tex. App.—Corpus Christi July 17, 2008, no pet.) (mem. op.).

## V.   THE NO-EVIDENCE MOTION

On his appeal of the no-evidence motion, McKeough contends in a single issue that the trial court erred in granting summary judgment, asserting that: "Camelot's motion for summary judgment did not carry its burden." Yet, we note, a party moving for no-evidence summary judgment has a relatively small "burden"—in that it must, "[a]fter adequate time for discovery," "state the elements as to which there is no evidence" as to claims or defenses on which the non-movant had the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i). Camelot did that here. A further reading of McKeough's argument clarifies he believes the trial court erred in granting summary judgment because he presented more than a scintilla of evidence on the issues raised by Camelot. McKeough's broad issue regarding the trial court's error as stated in McKeough's brief (though incorrectly placing the burden on Camelot) could be compared to a *Malooly* issue, though not well articulated.[5] But even so, we find McKeough has presented sufficient argument and authority to support his contentions that the trial court erred in granting summary judgment as to each of his two counterclaims. *See Border Demolition & Env't, Inc. v. Pineda*, 535 S.W.3d 140, 150 (Tex. App.—El Paso 2017, no pet).

In its no-evidence motion for summary judgment, Camelot urged McKeough could not produce any evidence of the following elements of his claim for breach of the Declaration: he performed, tendered performance of, or was excused from his contractual obligations; Camelot breached; and Camelot's breach caused injury to McKeough. Camelot argued McKeough also

---

[5]  An issue asserting merely "the trial court erred in granting summary judgment" is sometimes referred to as a *Malooly* issue, and, though broad and general, has been held "to allow argument as to all the possible grounds upon which summary judgment should have been denied." *Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970).

could not produce any evidence of the same elements of his claim for breach of the Bylaws.[6, 7] In support of his response to Camelot's motion, McKeough submitted his own affidavit and correspondence by which he requested repairs and records from Camelot.

As a preliminary matter, we first turn to address Camelot's evidentiary argument common to proof of both McKeough's counterclaims; namely, it argues McKeough's appeal fails because McKeough did not introduce copies of the Declaration or the Bylaws as summary judgment evidence in responding to its motion. However, the cases cited by Camelot on this point do not support its contentions. Instead, they mostly involve a lack of sufficient proof of oral contracts or reviews of jury verdicts. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220–22 (Tex. 1992); *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Univ. Nat'l Bank v. Ernst & Whinney*, 773 S.W.2d 707, 710 (Tex. App.—San Antonio 1989, no writ); *Granger v. Kishi*, 153 S.W. 1161, 1162 (Tex. App.—Galveston 1913, no writ). Only one involves a summary judgment on a written contract, and even that one was the bank's own traditional summary judgment on its own contract, not a no-evidence summary judgment on a defendant's counterclaim for breach. *See Williams v. Unifund CCR Partners Assignee of Citibank*, 264 S.W.3d 231, 233 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A movant's traditional summary judgment burden of proof (as a matter of law) is significantly higher than a non-movant's on a no-evidence motion (more than a scintilla), therefore *Williams* is also inapplicable.

Moreover, the trial court stated in its order granting a no-evidence summary judgment that it reviewed the motion, the response, the reply, *and the pleadings on file.* The Declaration was

---

[6] In its motion, Camelot argued adequate time for discovery had passed, and though McKeough noted the discovery period had not expired, he stated "[t]here is adequate time for discovery" on his counterclaims. *See* TEX. R. CIV. P. 166a(i).

[7] Notably, although Camelot decries McKeough's failure to attach the Declaration and Bylaws to its response to the no-evidence motion, Camelot does not deny the existence of either nor that they are valid and enforceable contracts.

attached to Camelot's petition and both of its traditional motions for summary judgment, and excerpts from the Declaration and the complete Bylaws were attached to both of McKeough's responses to Camelot's traditional motions for summary judgment, so they were appropriately before the trial court as part of the summary judgment record. *See Alicea v. Curie Bldg., L.L.C.*, 632 S.W.3d 142, 151 (Tex. App.—El Paso 2021, no pet.); *see also* Tex. R. Civ. P. 166a(c).

## A. Breach of the Bylaws as to records requests

We first address McKeough's counterclaim alleging Camelot failed to produce requested documents. This record controversy arose first in time to other contested events between the parties. McKeough urged Camelot failed to produce certain documents that are due to unit owners under Article XI of Camelot's Bylaws. Camelot's Bylaws indicate the basic provisions governing its functions and activities are found in the Declaration and are supplemented by the Bylaws. The Declaration states Camelot is subject to and shall comply with "the Act," which is defined to be the Texas Condominium Act, article 1301(a) of Vernon's Annotated Texas Statutes, the predecessor of Chapter 81 of the Texas Property Code.

Under the Condominium Act, Camelot is required to make certain books and records available to its owners for any proper purpose. *See Shioleno*, 2008 WL 2764530, at *3. Among the records that are to be reasonably available to owners are detailed financial records, an annual audit, the declaration, articles of incorporation, and a general description of the insurance coverage provided for the benefit of owners. *See* Tex. Prop. Code Ann. §§ 81.0011(b), 82.002(c), 82.114, 82.152, 82.153. These documents are to be reasonably available to unit owners. *See id.* § 82.114(b), (c).

The Bylaws state Camelot *shall* provide an annual budget and proposed amendments and an annual audit to each member of the association each year. Neither the Bylaws, the Declaration,

nor the Property Code[8] place obligations on the unit owners as a prerequisite to obtaining these documents, and the Bylaws place the mandatory duty of transmitting the budget and the audit to unit owners on Camelot. Although a unit owner's right to inspect these documents is limited to "any proper purpose," once an owner has stated a proper purpose, such as concern about substantial and inordinate expenditures by the association, the association must establish the absence of proper purpose. *Burton v. Cravey*, 759 S.W.2d 160, 162 (Tex. App.—Houston [1st Dist.] 1988, no writ), *disapproved of on other grounds by Huie v. DeShazo*, 922 S.W.2d 920 (Tex. 1996); *see Shioleno*, 2008 WL 2764530, at *3.

Our summary judgment record establishes McKeough began requesting documents from Camelot in December 2017. He emailed asking about the current management contract. As he sent follow up messages and letters, he stated his purpose in requesting them was to be sure his interests were being represented professionally and legally. His affidavit averred that Camelot had an ongoing lawsuit and claims over failure to make repairs, and he was concerned about being able to sell his unit. Camelot responded by denying his request even though his letter requesting them had a stated purpose.

McKeough requested records again in January 2018, this time stating the purpose was to check the condominium's financial operations and the management company's management practices. Camelot responded by asking him to attend a board meeting and explain his requests. When Camelot finally sent a letter making records available, six months after McKeough's initial request, McKeough requested a viewing time, and there was no response.

As to McKeough's proof of damages, we note that the provisions of the Condominium Act require Camelot to make certain books and records reasonably available to unit owners, *see* TEX. PROP. CODE. ANN. § 82.114(b), and, as stated above, neither the Bylaws, the Declaration, nor

---

[8] Although § 82.1141 delineates an owner's method for requesting records, it was not in effect at the time this suit was filed. *See* TEX. PROP. CODE ANN. § 82.1141 (effective Sept. 1, 2021).

the Property Code place obligations on the unit owners beyond stating "any proper purpose" for obtaining these records. *See Shioleno*, 2008 WL 2764530, at *3. This may indicate that McKeough need not produce additional evidence of damages to prevail on a cause of action against Camelot for failing to produce these records.

Assuming, without deciding, that McKeough was required to produce evidence of damages for breach of the Bylaws, McKeough pleaded that he suffered injury due to Camelot's failure to produce records ,and in the affidavit attached to his response to Camelot's no-evidence motion for summary judgment, he gave examples of the information to which Camelot denied him access. In particular, McKeough stated he sought but was denied records evidencing use of Camelot's funds to pay legal costs. He also stated that the Declaration provides owners the right to cancel any management contract by a majority, but Camelot's board did not respond to his request for the Association's contract with a newly-hired management company. This evidence of information that was denied to McKeough by Camelot's refusal to make records available is sufficient to raise a fact issue regarding the element of damages included in his claim of breach of the Bylaws.

Viewing the evidence as we must, treating all evidence favorable to the non-movant as true and indulging every reasonable inference in his favor, we conclude that he presented more than a scintilla of evidence on each contested element of his claim that Camelot breached its Bylaws by failing to provide him requested documents. We conclude the trial court erred in granting a no-evidence summary judgment on McKeough's breach of the Bylaws claim.

**B. Breach of the Declaration's obligation to repair**

McKeough argued by his counterclaims that Camelot breached articles 9.1 and 9.2 of the Declaration by failing to properly repair his unit. Camelot countered McKeough was unable to prove he tendered performance of his obligations under the Declaration because the trial court had previously determined, in ruling on Camelot's traditional motion for summary judgment, that McKeough had breached the Declaration by failing to pay assessments. This response conflates

the issues, however, as McKeough has not denied failing to pay assessments—rather, he argued he suspended paying them until Camelot would perform its contractual obligations. The issue is, then, whether McKeough's claim for breach of the Declaration for failure to repair is defeated, as a matter of law, by Camelot's claim against McKeough for his failure to pay assessments.

Article 9.1 of the Declaration gives Camelot "the responsibility of maintaining, repairing, replacing, and otherwise keeping in a first-class condition" all parts of the condominium not required to be maintained by the owners. Article 9.2 requires unit owners to repair and maintain the fixtures within the owner's unit. The unit is defined as "the elements of a Condominium which are not owned in common with other Owners of other Condominiums. The boundaries of a Unit shall be the interior surfaces of the perimeter walls, floors, ceilings, windows and doors of each Unit." Owners are prohibited from disturbing or relocating any utilities running through their unit. Utilities are defined as the "lines, pipes, ducting, wires, conduits or systems located within the walls of a Building, which are a part of the Common Areas." Fixtures are defined as "the fixtures and equipment within a unit commencing at the point where they connect with the Utilities."

With respect to performance of his obligations under the Declaration, McKeough asserted he was always current in paying his regular and special assessments until March 2019, at which time he stopped paying the assessments due to Camelot's failure to make repairs to his unit that were its responsibility. McKeough submitted his own affidavit in support, stating that "prior to the dispute with [Camelot]," he had "always paid regular and special assessments . . . promptly and on time[,]" but he also admitted, "[i]n March 2019 [he] suspended paying assessments until [Camelot] would perform their contractual obligations." Camelot, by its traditional motions for summary judgment, contended McKeough stopped paying his assessments in or around February 2019.

McKeough presented evidence that he began making demands on Camelot to repair plumbing problems in his attic that prevented him from using his apartment around June 2018. He

emailed Camelot asking if other neighbors could hear a "buzzing" in their ceiling in July 2018. He emailed about the vibrating pipes in the attic and noted he had been told it was a water line. McKeough said he could not get to the water line because it "goes into the two adjoining units and . . . because of big piles of rockwool insulation." He asserted he was partially successful at having his own contractors fix the problems in the attic.

McKeough also sustained damage to his roof during a hard rain in July 2019, resulting in a leak down a galvanized conduit and into a circuit breaker box. Prior to that time, McKeough produced a letter from May 2019 in which he informed Camelot's board that his expenditures for the attic in his unit were $4,305.41.

McKeough asserted Camelot's representative entered his apartment at 6:45 a.m. on August 1, 2018, the morning after he had been detained by police for recording Camelot refusing to repair his unit. McKeough stated this entrance into his apartment by Camelot was against his will and his direct instructions.[9] McKeough stated after that date, Camelot's board would no longer respond to any of his requests to repair.

This evidence establishes the Declaration placed certain duties on Camelot regarding maintenance of common areas and instructed unit owners like McKeough not to disturb utilities as they run through walls, which are common areas, and to repair fixtures only within the unit where they connect with utilities. McKeough presented evidence that he was unable to access some of the troublesome pipes in the attic as they passed through the walls into other units. McKeough presented evidence that he requested repairs on these attic problems at least six months prior to the time Camelot alleged he breached for failure to pay assessments. McKeough presented some evidence of damages he had sustained that resulted from the failure to repair. All this evidence is

---

[9] The Declaration gives Camelot the right to access a unit "during reasonable hours as may be necessary" to perform repairs to common areas accessible from that unit, and immediate access for emergency repairs.

more than a scintilla of proof that Camelot breached its obligations under the Declaration to repair the common areas.

Although Camelot argues that McKeough is precluded from establishing a breach of contract claim because he failed to pay assessments, McKeough's covenant to pay and Camelot's covenant to repair are separate covenants, as will be discussed in more detail below. *See Mayad v. Cummins Lane Owners Ass'n*, No. 01-88-00151-CV, 1988 WL 83859, at *3 (Tex. App.—Houston [1st Dist.] 1988, no writ) (not designated for publication). For the same reason that Camelot's failure to repair did not excuse McKeough's failure to pay assessments, McKeough's failure to pay assessments does not bar his breach of contract claim against Camelot for failure to repair.

McKeough presented more than a scintilla of evidence that Camelot breached its obligation to repair, and this evidence indicates Camelot's failure to repair happened before Camelot asserts McKeough breached his obligation to pay assessments, indicating McKeough was not in breach at the time Camelot failed to perform. Although Camelot's alleged failure to repair, as a breach of an independent covenant, did not relieve McKeough of the obligation to pay assessments, it also does not deprive McKeough of his right to maintain a suit against Camelot for prior material breach. Viewing the evidence favorable to McKeough, as we must, we conclude the trial court erred in granting a no-evidence summary judgment favorable to Camelot on McKeough's breach of contract for failure to repair under the terms of the Declaration.

In sum, we conclude the trial court erred in granting Camelot's no-evidence summary judgment as to McKeough's two counterclaims.

We sustain McKeough's issue challenging the no-evidence summary judgment.

## VI.   THE TRADITIONAL MOTION FOR SUMMARY JUDGMENT

In one of his two issues challenging the traditional summary judgment, McKeough asserts Camelot failed to meet its movant's burden. Camelot sought traditional summary judgment on

16

both its claims for nonpayment of outstanding assessments and for its request to judicially foreclose on McKeough's unit. To prevail on its motion for summary judgment, Camelot was required to prove: (1) the existence of a lien against McKeough's property securing payment of the assessments, attorney's fees, costs, and interest; (2) McKeough's failure to pay the debt secured by the lien; and (3) entitlement to foreclosure on the lien against McKeough's property to satisfy the debt. *Vill. Green Homeowners Ass'n, Inc. v. Leeder*, No. 04-10-00522-CV, 2011 WL 721260, at *2 (Tex. App.—San Antonio Mar. 2, 2011, no pet.); *Sloan v. Owners Ass'n of Westfield, Inc.*, 167 S.W.3d 401, 404 (Tex. App.—San Antonio 2005, no pet.) (mem. op.). Camelot supported its traditional motion with the Condominium Declaration and McKeough's warranty deed showing a vendor's lien for assessments was created when the Declaration was recorded and McKeough was bound by such. Additionally, Camelot argued McKeough intentionally failed to pay the outstanding assessments and attached a homeowner's ledger showing the missed payments.

McKeough contends Camelot failed to meet its summary judgment burden for three reasons. First, McKeough contends Camelot failed to sufficiently prove its own performance under the Condominium Declaration. Second, McKeough asserts Camelot's supporting affidavit in support of its motion was insufficient evidence to conclusively establish entitlement to summary judgment. Last, McKeough complains the Declaration provided by Camelot was not properly authenticated.

### A. McKeough's first argument

As its first basis for reversal of the trial court's grant of summary judgment, McKeough contends on appeal that Camelot failed to meet its traditional movant's burden because it did not first address its own performance as required by the Declaration. McKeough also states Camelot failed to prove the amounts it claimed were due and owing as he asserts that Camelot did not establish it had made all rightful offsets and credits.

At trial, we first note McKeough's response to Camelot's motion for summary judgment did not raise a complaint that Camelot failed to provide proof of its own performance or to challenge any other elements of Camelot's assessments claim. Rather, McKeough's arguments opposing summary judgment were based on a complaint against an award of attorney's fees and his assertion that Camelot was the first to materially breach the Condominium Declaration. To be clear, McKeough did not present any argument asserting Camelot failed to prove the elements of its claims to recover the assessment fees or its foreclosure petition. He neither disputed his obligation to pay assessments nor his discontinuance of paying fees after March 2019. He acknowledged assessments were outstanding, but he argued he had "stopped paying his assessments after the association breached the Declaration by failing to repair . . . and failing to provide him with certain documents and records that he had previously lawfully requested."

We conclude that two issues arise from McKeough's arguments on appeal. First, the entirety of McKeough's argument regarding Camelot's failure to meet its burden on specific elements of its claims contains two sentences without any citations to authority. *See* TEX. R. APP. P. 38.1 ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Second, Camelot argued in the court below that neither the Condominium Act nor the Declaration "mandates that the duty to pay assessments is contingent upon any obligations on the part of [Camelot]." It further argued that the Declaration provides for no exemption whatsoever

18

from payment of assessments, as it has a clause stating owners may not exempt themselves from liability for assessments duly levied by the Association, nor release the unit owned by him from the liens and charges, by waiver of the use and enjoyment of the common areas and facilities. Finally, Camelot noted the Declaration grants a lien against the unit of any owner who has failed to pay their assessments.

Article 6.11 of the Declaration provides in relevant part:

No Exemptions. No owner may exempt himself from liability for assessments duly levied by the Association, nor release the Condominium owned by him from the liens and charges hereof, by waiver of the use and enjoyment of the Common Areas and the facilities thereon.

Based on its express terms, the Declaration provides for no exemption whatsoever from payment of the assessments. This contractual provision is consistent with the policy that "condominium owners accept the terms, conditions, and restrictions in the Condominium Declaration by acceptance of deeds to the individual apartment units." *See Pooser*, 702 S.W.2d at 230–231 (concluding a condominium owner is not entitled to avoid assessments because of his disagreement with the actions taken by the association or board). And courts further recognize the obligation of a condominium owner to pay assessments is independent of the duty of the association to maintain the common areas, as these are independent covenants. *Mayad*, 1988 WL 83859, at *2–3. Accordingly, any breach on Camelot's part in performing repairs or other obligations did not excuse McKeough from his mandatory obligation to pay assessments under the Declaration.

We further note that McKeough failed to bring forward any evidence of payments for which he was not given credit. "The defendant's mere pleading of an affirmative defense does not prevent the rendition of summary judgment for a plaintiff who has conclusively established each element of its cause of action as a matter of law." *Wise v. Luke Dev., LLC*, No. 04-12-00477-CV, 2013 WL 4483381, at *2 (Tex. App.—San Antonio Aug. 21, 2013, no pet.) (mem. op.) (citing

19

*Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)). To the contrary, a defendant relying upon an affirmative defense must bring forward sufficient summary judgment evidence to raise an issue of fact on each element of that defense to avoid summary judgment. *See Brownlee,* 665 S.W.2d at 112; *Action Towing, Inc. v. Mint Leasing, Inc.*, 451 S.W.3d 525, 530 (Tex. App.—Houston [1st Dist.] 2014, no writ).

We conclude that McKeough's first argument is unavailing.

## B. McKeough's second argument

Next, McKeough asserts Camelot's evidence was insufficient because its supporting affidavit is "merely a threadbare document" seeking to prove up the attached ledger. He alleges the affidavit does not aver that all offsets and credits have been given and applied to McKeough's debt.

The supporting affidavit McKeough references was a business records affidavit signed by Camelot's representative. The representative, Camelot's board president and duly authorized custodian of its records, averred she was of sound mind and competent to make the affidavit. Attached to the affidavit were two pages of records which the representative averred were the original or exact duplicates of the originals and were made in the regular course of business. The attached record was a "Homeowner Ledger" for McKeough showing different charges applied and payments made by him.

Camelot asserts McKeough waived this complaint on appeal because he did not object to the admissibility of the affidavit in the trial court. *See Dulong v. Citibank (S. Dakota), N.A.*, 261 S.W.3d 890, 893 (Tex. App.—Dallas 2008, no pet.) (demonstrating an objection to affidavits on the basis the affiant lacks personal knowledge or on the basis it fails to comply with business records exception to hearsay rule must be preserved in the trial court); *see also* TEX. R. APP. P. 33.1. However, objections to defects in the substance of the affidavit may be raised for the first time on appeal. *Ordonez v. Solorio*, 480 S.W.3d 56, 64 (Tex. App.—El Paso 2015, no pet.). Even

20

assuming McKeough's complaint as one of defect in substance, as he complains the affidavit cannot provide sufficient summary judgment evidence, his complaint still fails.

In support of his argument, McKeough presents a string cite of cases without any further argument or application. All the cited cases held that affidavits containing language to the effect that "all offsets and credits have been given and applied" provided sufficient evidence to support summary judgment. *See Mailloux v. KJ Env't Mgmt., Inc.*, No. 02-20-00059-CV, 2020 WL 6334176, at *4 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) (holding that language in the affidavit that "the amount owed is $12,957.43[,]" and "all offsets and credits have been given and applied" to the debt was sufficient to support summary judgment); *Albright v. Good Samaritan Soc'y-Denton Vill.*, No. 02-16-00090-CV, 2017 WL 1428724, at *4 (Tex. App.— Fort Worth Apr. 20, 2017, no pet.) (mem. op.) (concluding an affidavit and billing statement were not substantively defective and constituted competent summary judgment evidence); *Emiabata v. Nat'l Cap. Mgmt., LLC*, No. 03-10-00373-CV, 2011 WL 4924124, at *3 (Tex. App.—Austin Oct. 13, 2011, no pet.) (mem. op.) (holding language of "[a]fter all offsets, credits and payment have been applied, there remains owing on the Note[] the principal amount of $20,034.91[,]" was sufficient to support summary judgment).

Even interpreting McKeough's argument as one asserting the evidence was insufficient because the affidavit did not expressly state "all offsets and credits have been given and applied," we conclude that McKeough's cited cases fail to support his assertion. The cited cases did not hold any of the affidavits were defective and further found summary judgment was proper. Furthermore, McKeough did not present any controverting evidence to challenge the contents of the ledger which showed McKeough had only made payment of $25 between February 2019 and July 2020.

We conclude that McKeough's second argument is unavailing.

## C. Authentication of Condominium Declaration

21

Lastly, McKeough asserts the Condominium Declaration was unauthenticated and could not support Camelot's unpaid assessments claim. McKeough contends the Declaration contains "at most a vestige of a seal and no comprehensible signature of any public official attesting to said document."

Complaints on the authentication of records attached to a motion for summary judgment are waived if not raised in the trial court. *Petro-Hunt, L.L.C. v. Wapiti Energy, L.L.C.*, No. 01-10-01030-CV, 2012 WL 761144, at *4 (Tex. App.—Houston [1st Dist.] Mar. 8, 2012, pet. denied) (mem. op.); *Watts v. Hermann Hosp.*, 962 S.W.2d 102, 105 (Tex. App.—Houston [1st. Dist.] 1997, no pet.). McKeough did not raise any objection regarding the Declaration's authentication in the trial court. For this reason, this complaint is waived.

Moreover, McKeough relied on the Declaration and attached portions of it to his response to Camelot's motion for summary judgment. A party on appeal may not complain of improper evidence introduced by the other side where he himself has introduced the same evidence or evidence of a similar character. *McInnes v. Yamaha Motor Corp. U.S.A.*, 673 S.W.2d 185 (Tex. 1984); *Echo Lake Pilots Ass'n v. Echo Lake Prop. Owners Ass'n, Inc.*, No. 12-17-00343-CV, 2018 WL 5961544, at *2 (Tex. App.—Tyler Nov. 14, 2018, no pet.) (mem. op.).

We conclude Camelot conclusively established the elements for its claim for judicial foreclosure and the trial court did not err. For all these reasons, we overrule McKeough's issue challenging the trial court's traditional summary judgment.

## VII. THE AWARD OF ATTORNEY'S FEES

Along with the trial court's judgment granting Camelot's traditional motion for summary judgment, the trial court also awarded Camelot attorney's fees in the amount of $23,890.99, costs in the amount of $934.77, and conditional attorney's fees in the case of an unsuccessful appeal by McKeough. In a final issue, McKeough asserts the trial court's award of attorney's fees should be

remanded because fees in the itemization were related to responses to his counterclaims rather than Camelot's own claims. Also, McKeough asserts Camelot's supporting attorney's fees affidavit was too conclusory to support the award of trial fees or the award of conditional appellate fees.

The reasonableness of attorney's fees is generally a fact question. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "[T]he affidavit of the attorney representing a claimant constitutes expert testimony that will support an award of attorney's fees in a summary judgment proceeding." *Haden v. David J. Sacks, P.C.*, 332 S.W.3d 503, 513 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "If a movant presents expert testimony in support of attorney's fees, the burden shifts to the non-movant to raise a fact issue." *BBX Operating, LLC v. Am. Fluorite, Inc.*, No. 09-19-00278-CV, 2021 WL 3196514, at *21 (Tex. App.—Beaumont July 29, 2021, pet. denied) (mem. op.). "If an attorney's affidavit regarding fees is properly controverted by an opposing attorney, a fact issue is raised on reasonableness and summary judgment is precluded." *Sun Tec Computer, Inc. v. Recovar Grp., LLC*, No. 05-14-00257-CV, 2015 WL 5099191, at *5 (Tex. App.—Dallas Aug. 31, 2015, no pet.) (mem. op.).

Camelot's summary judgment evidence to support the award of attorney's fees included the affidavit of its attorney with attached billing records. In the affidavit, the attorney described his level of experience and further indicated he usually charged an hourly rate of $250 per hour but he reduced his rate to $200 per hour due to his longstanding relationship with Camelot. His affidavit outlined the lodestar factors and averred the legal services described in the billing records were reasonable, necessary, and timely performed. The billing records included dates of service, amount of time spent on a task, and a brief description of the nature of the services performed.

McKeough's attorney included a controverting affidavit in his summary judgment response attesting the fees sought by Camelot were not reasonable or necessary. McKeough's attorney described his qualifications, level of experience, and stated he knew the history of the case. In opposition to Camelot's claim, he averred the requested fees were not reasonable and necessary.

23

The affidavit contained testimony that the total sum of $23,890.99 was not justified and 120 hours was too much time to have been incurred in prosecution of the matter. Additionally, he attested that limited work was performed on the case, which he characterized as, "the filing of a lawsuit, limited discovery and the filing of a motion for summary judgment along with settlement negotiations and the attendance of one hearing, and attendance of one mediation session." Lastly, McKeough's attorney averred the time spent working on the claims asserted and the counterclaims brought by McKeough were not properly segregated.

We conclude McKeough's controverting affidavit raised a genuine issue of material fact as to whether fees for certain tasks should have been segregated or were so intertwined with claims having recoverable attorney's fees that could not be segregated. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006). Moreover, because the attorney's fees award was permitted by law but awarded prior to the determination of the no-evidence motion, and because we have further concluded the trial court's granting of the no-evidence summary judgment was made in error, we otherwise conclude the award of attorney's fees must be readdressed by the trial court. *See Candlewood Creek Neighborhood Ass'n v. Gashaye*, No. 05-11-00380-CV, 2012 WL 3135721, at *2 (Tex. App.—Dallas Aug. 2, 2012, no pet.) (mem. op.) ("[A] homeowner's association covenant is a contract between the parties, and Texas law permits the recovery of attorney's fees on a breach of contract action.").

We sustain McKeough's last issue. We reverse the award of attorney's fees and remand the issue to the trial court for its reconsideration in light of this opinion.

## VIII.   CONCLUSION

We deny McKeough's and Camelot's motions for rehearing.

The trial court did not err in granting traditional summary judgment on Camelot's right to foreclose. The trial court erred in granting no-evidence summary judgment on McKeough's claims

against Camelot for breach of the Declaration for failure to repair and breach of the Bylaws for failure to produce its books and records upon his request.

We affirm the trial court's summary judgment as to Camelot's right to foreclose. We reverse the trial court's summary judgment as to McKeough's counterclaims and its award of attorney's fees. We remand this cause to the trial court for further proceedings consistent with this opinion.

GINA M. PALAFOX, Justice

June 13, 2023

Before Rodriguez, C.J., Palafox, and Alley, JJ.
(Alley, J., not participating)

25